STATE, Respondent, v. GEDKO and wife, Appellants.*

*No. State 194. Argued May 8, 1974.—Decided June 4, 1974.*
(Also reported in 218 N. W. 2d 249.)

* Motion for rehearing denied, without costs, on August 1, 1974.

For the appellants there was a brief by *Morse, Morse & Roggensack* of Lancaster, and oral argument by *R. R. Roggensack*.

For the respondent the cause was argued by *Robert D. Martinson*, assistant attorney general, with whom on the brief was *Robert W. Warren*, attorney general.

BEILFUSS, J. The defendants contend that the conduct of the police in this case constituted an unlawful search in violation of the fourth amendment. The facts of this case are markedly similar to *Hester v. United States* (1924), 265 U. S. 57, 58, 59, 44 Sup. Ct. 445, 68 L. Ed. 898, wherein the United States Supreme Court stated:

"The witnesses whose testimony is objected to were revenue officers. In consequence of information they went toward the house of Hester's father, where the plaintiff in error lived, and as they approached saw one Henderson drive near to the house. They concealed themselves from fifty to one hundred yards away and saw Hester come out and hand Henderson a quart bottle. An alarm was given. Hester went to a car standing near, took a gallon jug from it and he and Henderson ran. One of the officers pursued, and fired a pistol. Hester dropped his jug, which broke but kept about a quart of its contents. Henderson threw away his bottle also. The jug and bottle both contained what the officers, being experts, recognized as moonshine whiskey, that is whiskey illicitly distilled; said to be easily recognizable. The other officer entered the house, but being told there was no whiskey there left it, but found outside a jar that had been thrown out and broken and that also contained whiskey. While the officers were there other cars stopped at the house but were spoken to by Hester's father and drove off. The officers had no warrant for search or arrest, and it is contended that this made their evidence inadmissible, it being assumed, on the strength of the pursuing officer's saying that he supposed they were on Hester's land, that such was the fact. It is obvious that even if there had been a trespass, the above testimony was not obtained by an illegal search or seizure. The defendant's own acts, and those of his associates, disclosed the jug, the jar and the bottle—and there was no seizure in the sense of the law when the officers examined the contents of each after it had been abandoned. This evidence was not obtained by the entry into the house and it is immaterial to discuss that. The suggestion that the defendant was compelled to give evidence against himself does not require an answer. The only shadow of a ground for bringing up the case is drawn from the hypothesis that the examination of the vessels took place upon Hester's father's land. As to that, it is enough to say that, apart from the justification, the special protection accorded by the Fourth Amendment to the people in their 'persons, houses, papers, and effects,' is not extended to the open fields. The distinction between the latter and the house is as old as the common law. 4 Bl. Comm. 223, 225, 226."

The defendants argue that *Hester, supra,* is no longer valid and that the concept of the "open fields" doctrine has been modified by *Katz v. United States* (1967), 389 U. S. 347, 88 Sup. Ct. 507, 19 L. Ed. 2d 576, so as to exclude from the concept of open fields those areas where the person had a reasonable "expectation of privacy." However, as pointed out by Mr. Justice HEFFERNAN in the recent case of *Conrad v. State,* ante, p. 616, 218 N. W. 2d 252, the limitation of *Katz* is not on the concept of "open fields" but rather on those areas traditionally thought to be protected by the fourth amendment such as one's home and the curtilage surrounding it. The opinion concludes that, "The viability of *Hester* was not weakened by the holding of *Katz,*" *Conrad, supra,* and is controlling here.

Thus, under *Hester* and *Conrad, supra,* there was no violation of the defendants' fourth amendment rights.[1]

The defendant William H. Gedko contends the evidence is not sufficient to sustain a conviction of possession with intent to sell.

This issue was raised in motions after verdict in the trial court. The trial court thoroughly reviewed and considered the evidence. It was its conclusion there was ample credible evidence in the record to sustain the jury's finding. We agree.

The quantity of marijuana seized was about 60 pounds, with a value of $8,000 to $12,000. This quantity was sufficient to produce about 17,000 marijuana cigarettes.

---

[1] At oral argument the defendants cited a recent California case, *People v. Sneed* (1973), 32 Cal. App. 3d 535, 108 Cal Rptr. 146. The case is not consistent with our opinion in *Conrad, supra,* and we are not bound by it. The principle is well established that while the various states may not establish standards that are below those announced by the United States Supreme Court in federal constitutional rights issues, they may expand those rights if they so choose. *See Lego v. Twomey* (1972), 404 U. S. 477, 489, 92 Sup. Ct. 619, 30 L. Ed. 2d 618. *Conrad, supra,* is consistent with the federal rule and we adhere to it.

It is hardly reasonable to believe that these defendants would have that amount in their possession for their own personal use. Other probative evidence was discussed by the trial court—the activities and antics of the defendants when they were fearful that they might be apprehended by hiding some and attempting to burn the rest of the marijuana in an effort to destroy incriminating evidence. The fact that marijuana was found in several forms—some raw, some processed, some made into cigarettes and some in peyote buttons; and Patricia's statement to the officers that she had, in effect, told "Tad" that he could get into trouble if he kept "messing" with this stuff.

We are of the opinion that a reasonable jury could draw inferences from this evidence that convinced it beyond a reasonable doubt that defendant William H. Gedko had this marijuana in his possession with intent to sell.[2]

*By the Court.*—Judgment and order affirmed.

[2] *See State v. Christel* (1973), 61 Wis. 2d 143, 159, 211 N. W. 2d 801.