325 So.2d 222 (1975)
STATE of Louisiana
v.
Billy HOUSE.
No. 56565.
Supreme Court of Louisiana.
December 8, 1975.
Rehearing Denied January 16, 1976.
Dissenting Opinion January 26, 1976.
William E. Woodward, Clinton, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Leon A. Picou, Jr., Dist. Atty., Cynthia Picou Branton, Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
Billy House was convicted of possession of marijuana with the intent to distribute in violation of R.S. 40:966(A). The conviction was by a jury, on January 13, 1975. Defendant was sentenced to ten years at hard labor, which was set aside after the filing of a multiple bill; he was subsequently sentenced as a fourth offender to one hundred years at hard labor.
On appeal, defendant relies on four assignments of error. We find merit in Assignment No. 3.
At the close of the State's case, defendant moved for a directed verdict of acquittal, *223 arguing that the State had introduced no evidence of intent to distribute marijuana. The motion for a directed verdict was overruled.
Defendant was an inmate at Angola at the time of this offense. He was employed as an electrician, and, along with a fellow inmate, was taken in a pickup truck from a pickup point to the prison electric shop. Joe Matthews, a maintenance employee at the penitentiary, drove the truck and supervised the work.
After a brief stop at the electric shop, defendant, another inmate and Matthews proceeded to one of the buildings which housed penitentiary employees and removed an electrical motor from an attic fan. Matthews then drove to a store on the prison grounds, where he bought a pack of cigarettes, then proceeded toward the electric shop. The truck reached a roadblock manned by penitentiary personnel, who searched defendant. A cellophane package containing about one gram of marijuana, mainly seeds and stems, was found in House's pocket. He was carried into a nearby building, stripped and searched. One marijuana cigarette was found in his watch pocket; twenty marijuana cigarettes were found in his boot.
Although searched, no other contraband was found on the pickup truck, or on the other occupants of the truck, except (as brought out on a motion for a new trial) for $5.00 on the person of one of the other inmates.
Except for the facts recited above, there was no evidence in the record which might tend to prove that the defendant possessed the marijuana "with intent to . . . distribute, or dispense a controlled dangerous substance . . ."
The relevant statutory references to intent are:
"Criminal intent may be specific or general:
"(1) Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.
"(2) General criminal intent is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act." R.S. 14:10.
"The definitions of some crimes require a specific criminal intent, while in others no intent is required. Some crimes consist merely of criminal negligence that produces criminal consequences. However, in the absence of qualifying provisions, the terms `intent' and `intentional' have reference to `general criminal intent.'" R.S. 14:11.
The reporter's comment explaining R.S. 14:11 is:
"Mental element:
"This section amplifies the three preceding sections, and makes it perfectly clear that the required mental element varies with varying crimes. In some crimes, particularly criminal attempts, `specific intent' is required. In still others, such as negligent homicide, only `criminal negligence' is necessary.
"The definitions of the great bulk of the crimes in the Code, however, state that there must be an `intentional' production of certain prescribed consequences (for example, `Aggravated arson is the intentional damaging * * * or setting fire to any structure * * *'). However, in some crimes the production of certain consequences plus a specific intent to produce or accomplish some prescribed consequences is necessary (for example, `Forgery is the false making or altering, *224 with intent to defraud, of any signature * * *'). Such an intent is a `specific intent.'
"The concluding sentence of this section indicates that when the term `intentional' or `intent' is used alone without modification, it refers to `general criminal intent' as defined in the preceding section."
R.S. 15:445 and R.S. 15:446 are concerned with the proof of intent:
"In order to show intent, evidence is admissible of similar acts, independent of the act charged as a crime in the indictment, for though intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction." R.S. 15:445.
"When knowledge or intent forms an essential part of the inquiry, testimony may be offered of such acts, conduct or declarations of the accused as tend to establish such knowledge or intent and where the offense is one of a system, evidence is admissible to prove the continuity of the offense, and the commission of similar offenses for the purpose of showing guilty knowledge and intent, but not to prove the offense charged." R.S. 15:446.
Part of the "circumstances of the transaction" is the quantity of the substance involved. In some cases, the quantity involved may be so large that it would be unreasonable to contend that its possession was with any other purpose than to distribute. This court recently ruled that the possession of a quantity of marijuana sufficient for the manufacture of six hundred cigarettes was sufficient to infer from that circumstance that the defendant possessed with the intent to distribute. State v. Sibley, 310 So.2d 100 (La.1975).
Cases from other jurisdictions, in which the question of the sufficiency of the evidence to prove intent to distribute was raised, demonstrate that possession of large quantities of marijuana constitutes evidence of intent to distribute. In State v. Boyd, 224 N.W.2d 609 (Iowa 1974), thirty-three pounds of marijuana along with packaging equipment usually associated with the sale and delivery of the material was sufficient evidence of intent. In State v. Bowers, 87 N.M. 74, 529 P.2d 300 (1974), two hundred forty-six pounds of marijuana, along with evidence of activities compatible with distribution, was sufficient evidence of intent to distribute. A quantity sufficient to manufacture seventeen thousand cigarettes justified an inference of intent to distribute in State v. Gedko, 63 Wis.2d 644, 218 N.W.2d 249 (1974). In Daygee v. State, 514 P.2d 1159 (Alaska 1973), fifteen pounds of marijuana, scales and bags were held evidence probative of intent to sell.
In State v. Sullivan, 190 Neb. 621, 211 N.W.2d 125 (1973), defendant was found in possession of twenty-nine "lids," enough marijuana for eight to nine hundred cigarettes. The court held:
"The evidence, although circumstantial and in dispute, presented a question for the trier of fact. The possession of a large quantity of a controlled substance packaged in a form customarily used for distribution will support an inference of possession with intent to distribute. . . " 211 N.W.2d 125, 126.
In State v. Turner, 192 Neb. 397, 222 N.W.2d 105 (1974), the court listed these factors as probative of possession with intent to distribute a controlled dangerous substance:
". . . Circumstantial evidence to establish that possession of a controlled substance was with intent to distribute or deliver may consist of the quantity of the substance, the equipment and supplies found with it; the place it was found; the manner of packaging; and the testimony of witnesses experienced and knowledgeable in the field. . ." 222 N.W.2d 105, 106.
*225 Some jurisdictions have rejected the contention that the intent to distribute can be inferred from quantity alone. Redden v. State, (Del.Supr.), 281 A.2d 490 (1971). In Perry v. State, 303 A.2d 658, 659 (Del.1973), that court said, in holding that growing, manicuring and transporting over seven pounds of marijuana justified an inference of intent to sell:
"Quantity and possession do not, standing alone, necessarily prove intent to sell, but must be considered with the attendant circumstances. . . ."
See also State v. Larko, 6 Conn. Cir. 564, 280 A.2d 153 (1971) and Commonwealth v. Ellis, 356 Mass. 574, 254 N.W.2d 408 (1970), where it was held that an inference drawn from possession, alone, invaded the prohibited realm of speculation and conjecture and could not support a conviction.
A similar problem to the one we face confronted the Idaho Supreme Court in State v. O'Mealey, 95 Idaho 202, 506 P.2d 99 (1973). In that case, the defendant was charged with, among other things, possession of marijuana with intent to deliver. The charge was based on his possession of 63.23 grams of marijuana, an amount greater than that found on the defendant in the instant case. In upholding a dismissal because of lack of evidence of intent, the court stated, in language particularly apt to the problem we face in the instant case:
"We turn now to the amount of marijuana discovered on the defendant's person or clothing, and whether such amount was more than that necessary for his personal use. Marihuana, A Signal of Misunderstanding; First Report of the National Commission on Marihuana and Drug Abuse (1972), Appendix I, pp. 28-30, appears to indicate that the amount found in defendant's possession in this case could be reasonably expected to furnish approximately 126, 0.5 gram marijuana cigarettes. The Commission's report likewise would appear to indicate that a heavy marijuana user could utilize 70 marijuana cigarettes per week. We emphasize that the authorities furnish little if any conclusive knowledge one way or the other on the amounts of marijuana sutiable for personal consumption. Hence, it is crucial in a matter of this type that the State in its evidence furnish the lower court and this court with some purported evidence sufficient to reach a conclusion as to what amount of drugs may create a presumption of intent to deliver.
"In the absence of any statutory presumption, without any other evidence to corroborate defendant's intent to deliver, and without sufficient knowledge upon which to base judicial notice, we have no alternative but to find that the magistrate in this case abused his discretion in binding the defendant over for trial." 506 P.2d 99, 102.
In the instant case, the State has shown only that (1) the defendant was in possession of twenty-one marijuana cigarettes and a small plastic bag containing seeds and stems and (2) the defendant traveled, with his supervisor, from living quarters to electric shop to other points on the prison grounds.
However, the State offered no evidence: (1) that the defendant ever distributed or attempted to distribute any marijuana; (2) that the marijuana was in a form usually associated with marijuana possessed for distribution to others; (3) that the amount was such as to create a presumption of intent to distribute; (4) of expert or other testimony that such an amount as found on the defendant is inconsistent with personal use only; and (5) of any paraphernalia, such as baggies or scales, evidencing an intent to distribute.
The trial judge's ruling on a motion for a directed verdict will be reversed only if we find, as a matter of law, that there is no evidence of an essential element of the offense in the record. State v. *226 Ford, 315 So.2d 276 (La.1975); State v. Williams, 311 So.2d 850 (La.1975); State v. Douglas, 278 So.2d 485 (La.1973). There are at least two elements in the crime of possession of marijuana with intent to distribute. Obviously, one element is possession and the other is the intent to distribute. One element of the crime cannot, without more, be said to supply "some evidence" of the other required element of the offense. In a drunk driving case, evidence of drunkenness alone cannot be said to satisfy the absence of any evidence of driving.
We cannot say that mere possession is "some evidence" of possession of marijuana with the intent to distribute. We recognize that proof of intent nearly always rests on permissible inferences from the circumstances of the transaction; conjectural conclusions are not permitted. In the case before us there is no evidence from which the jury might legitimately infer that the possession, alone, of the marijuana was accompanied by the intent to distribute.
The motion for a directed verdict should have been granted. The conviction and sentence are set aside and the cause remanded to the trial court for proceedings consistent with this opinion.
SANDERS, C.J., concurs.
SUMMERS, J., dissents and will assign reasons.
BOLIN, J., dissents.
SUMMERS, Justice (dissenting).
I cannot agree that there is no evidence at all of defendant's intent to distribute marijuana. As the Court's opinion makes manifest, the decision turns on the sufficiency of the evidence.
I do not agree that a directed verdict in this jury trial was constitutionally permissible. See State v. Hudson, 253 La. 992, 221 So.2d 484 (1969), and my dissent in State v. Douglas, 278 So.2d 485 (La.1973). The appropriate constitutional principle is embodied in Section 5(C) of Article V of the Constitution of 1974, as it was in Section 9 of Article XIX of the Constitution of 1921. Jurisdiction of this Court and the scope of its review in criminal matters is declared by the Constitution to extend to questions of law only. Since the trial in the case before us, this proposition has been affirmed by the legislature by amending Article 778 of the Code of Criminal Procedure to provide that a motion for a directed verdict is permissible only "in a trial by the judge alone."
In addition, I cannot subscribe to the rationale of the decision even if I could concede that a directed verdict was permissible in this jury trial. The sufficiency of the evidence upon which this reversal turns, is, of course, a question of fact bearing upon the guilt or innocence of the accuseda matter beyond this Court's jurisdictiona matter which is the exclusive prerogative of the jury. La.Const. Art. I, § 17 (1974). It is implicit in the limitation of this Court's jurisdiction in criminal matters "to questions of law," only that this Court has no jurisdiction to determine the sufficiency of the evidence. La.Const. Art. V, § 5(C) (1974). It is only when there is no evidence whatsoever of the crime or an essential element thereof that it becomes a question of law: whether it is legal to convict an accused on no evidence at all. State v. Singley, et al, 195 La. 519, 197 So. 218 (1940). This proposition is elementary and fundamental to our system of criminal justice. It ordains that juries decide guilt or innocence, not judges.
It is my view that the number of marijuana cigarettes required to establish intent to distribute is a question of fact which the jury must decide. Thus, whether possession of two dozen or 600 marijuana cigarettes is required to infer an intent to distribute is a fact question dependent upon the circumstances of each case. The quantity *227 of marijuana possessed by this defendant undoubtedly furnished a basis for the jury to find that he intended to distribute. This decision tells the jury it cannot make this inference of intent on the basis of the quantity of marijuana involved herea clear question of the sufficiency of the evidence. In doing so the Court substitutes its judgment for the jury's.
Inferences from facts are fact-finding determinations peculiarly within the province of the jury. An inference is a logical inductive or deductive process by which the mind arrives at reasoned conclusions from data before it. In this case the jury made a permissible deduction from positive physical evidence before the jury. Here an inference was essential to the proof of intent. For intent is a subjective element often impossible to establish by direct evidence. Consequently the legislature has specifically authorized the proof of intent by inference.
"In order to show intent, evidence is admissible of similar acts, independent of the act charged as a crime in the indictment, for though intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction." La.R.S. 15:445.
Decisions of other states relied upon by the Court are inappropriate. This Court's limited jurisdiction on review to questions of law only distinguishes our appellate practices from that of the other states.
The decision in State v. Sibley, 310 So.2d 100 (La.1975), cited in the majority opinion, is not authority for the holding in the instant case. State v. Sibley did not turn on the sufficiency of the evidence. To the contrary, that case correctly held that intent to distribute could be inferred from the possession of 600 marijuana cigarettes. In this holding the Court merely answered the defense contention that there was no direct evidence of intent to distribute by citing Section 445 of Title 15 of the Revised Statutes, supra. The Sibley Court did not question the "sufficiency" of the evidence.
In my view this decision promotes a tendency to erode the principle that the jury is the exclusive judge of the facts on questions of guilt or innocence. Those who subscribe to this proposition would usurp this prerogative of the jury and invest in themselves a veto over jury verdicts. So long as the constitution declares otherwise, I cannot subscribe to the tendency. To do so is to relegate the jury function to a useless exercise and effectively deny trial by jury.
I respectfully dissent.