# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 07-847

STATE OF LOUISIANA

VERSUS

SAMMY D. SMITH

**********

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, DOCKET NO. C 11451-1B
HONORABLE DEE A. HAWTHORNE, DISTRICT JUDGE

**********

JAMES T. GENOVESE
JUDGE

**********

Court composed of Oswald A. Decuir, Michael G. Sullivan, and James T. Genovese, Judges.

AFFIRMED.

Edward K. Bauman
Louisiana Appellate Project
Post Office Box 1641
Lake Charles, Louisiana 70602-1641
(337) 491-0570
COUNSEL FOR DEFENDANT/APPELLANT:
    Sammy D. Smith


Van H. Kyzar
District Attorney -- Tenth Judicial District
ADA James S. Seaman
Post Office Box 838
Natchitoches, Louisiana 71458-0838
(318) 357-2214
COUNSEL FOR APPELLEE:
    State of Louisiana

**GENOVESE, Judge.**

On October 10, 2006, the Defendant, Sammy D. Smith, was charged by amended bill of information as follows: 1) criminal conspiracy to manufacture methamphetamine, in violation of La.R.S. 40:967(A) and 14:26; 2) possession with intent to distribute methamphetamine, in violation of La.R.S. 40:967(A); and, 3) creation and/or operation of a clandestine lab, in violation La.R.S. 40:983. Pursuant to jury trial held on October 10-11, 2006, the Defendant was found guilty as charged.

On December 13, 2006, the Defendant was sentenced on count one to fifteen years at hard labor, the first ten without benefit of probation, parole, or suspension of sentence, and he was ordered to pay a fine and costs of $1,000.00, $1,500.00 to the drug task force, $100.00 to the DARE program, and $250.00 to the Indigent Defender Board. On count two, the Defendant was sentenced to five years at hard labor, the sentence to be served concurrently with the sentence for count one, and he was ordered to pay a fine of $1,000.00. On count three, the Defendant was sentenced to five years, to be served concurrently with counts one and two, and he was ordered to pay a fine and costs of $1,000.00. The fines and costs on all three counts were ordered to be paid concurrently for a total of $2,850.00.

The Defendant is now before this court on appeal, asserting that there was insufficient evidence to support his convictions. For the following reasons, the Defendant's convictions are affirmed.

**FACTS**

On June 11, 2006, an informant provided information to the Natchitoches Drug Task Force that the Defendant was traveling from Shreveport, Louisiana, to his home in Natchitoches, Louisiana, with a large amount of methamphetamine in his vehicle

1

and that he was planning to manufacture methamphetamine upon his arrival at home. The vehicle in which the Defendant was a passenger was spotted and stopped. His wife, Tammy Smith, was the driver, and their two children were also passengers in the back seat. The Defendant's vehicle was searched and 6.3 grams of methamphetamine and drug paraphernalia were seized. A search warrant for the Defendant's home was also obtained. Following a search of his home, officers found chemicals and items used to manufacture methamphetamine, along with a recipe for the manufacture of same.

## ASSIGNMENT OF ERROR

In his sole assignment of error, the Defendant argues that the evidence was insufficient to support his convictions. The analysis for a claim of insufficient evidence is well-settled:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

2

*Conspiracy to Manufacture Methamphetamine*

Criminal conspiracy is defined in La.R.S. 14:26(A) as follows:

> Criminal conspiracy is the agreement or combination of two or more persons for the specific purpose of committing any crime; provided that an agreement or combination to commit a crime shall not amount to a criminal conspiracy unless, in addition to such agreement or combination, one or more of such parties does an act in furtherance of the object of the agreement or combination.

In the instant case, the State had the burden of proving, beyond a reasonable doubt, that the Defendant conspired to manufacture methamphetamine and that either the Defendant or the co-conspirator acted in furtherance of manufacturing methamphetamine. Additionally, as noted in *State v. Zeno*, 99-69, pp. 6-7 (La.App. 5 Cir. 8/31/99), 742 So.2d 699, 704-05:

> Specific intent is an essential element of conspiracy. *State v. Ellis*, 94-599 (La.App. 5 Cir.5/30/95), 657 So.2d 341, 361, *writs denied*, 95-2095 (La.12/8/95), 664 So.2d 421 and 95-1639 (La.1/5/96), 666 So.2d 300. Specific intent is defined as "... that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). The determination of specific criminal intent is a question of fact and may be inferred from circumstances and actions of the defendant. *State v. Armant*, 97-1256 La.App. 5 Cir.5/27/98), 719 So.2d 510, 517, *writs denied*, 98-1884 (La.11/20/98), 729 So.2d 3 and 98-1909 (La.11/20/98), 729 So.2d 4. Proof of a conspiracy may be made by direct or circumstantial evidence. *State v. Ellis*, *supra*.

The record reflects that the conspiracy charge evolved from the statement of John Brent Speir[1] taken by Agent Glen Sers of the Natchitoches Drug Task Force.[2] As a result of the statement, Sergeant Roger Henson, also of the Natchitoches Drug Task Force, obtained a search warrant for the Defendant's home. At trial, Sergeant

---

[1] Though identified in the transcript as "John Brent Speir" we note that the affidavit of Sergeant Henson identifies him as "Jon Brenton Speir." There being no issue whether this is in fact the same individual, we will refer to him hereafter as "Speir."

[2] Agent Sers did not testify at trial. Also, Speir invoked his Fifth Amendment right and chose not to testify.

Henson was questioned about the affidavit he submitted in obtaining the search warrant. The specific facts set forth in the affidavit are as follows:

> On the 10[th] of June 2006[,] agents of the Natchitoches Multi-Jurisdictional Drug Task Force initiated a traffic stop on Highway 119 near Gorum[,] Louisiana. The occupants of this vehicle being Jon Brenton Speir and Stacy Valentine. As a result of this stop agents located approximately 1.5 grams of suspected methamphetamine. During this investigation Jon Brenton Speir gave Agent Glen Sers a voluntary recorded statement which indicated that Todd Wayne Smith and Sammy Smith (brothers) had gone to Shreveport[,] Louisiana for the purpose of purchasing approximately 2 ounces of suspected methamphetamine and were on there [sic] way back at this time. He stated in the recording that the brothers were to return to Sammy Smith's residence located at 128 Andy Cedars Road in Gorum where they planned to cook methamphetamine tonight. He further stated that they had everything they needed to cook the methamphetamine with the exception of ephedrine and that he personally observed a black leather type bag and a camouflaged bag containing containers, smoking pipes, scales, suspected methamphetamine and many cellophane baggy's [sic]. He also observed a glass jar or container that contained suspected red phosphorus along with red devil lye, peroxide, mason jars and flasks along with a glass vile containing suspected iodine. Note: all of these items are used during the manufacturing process of methamphetamine.

Sergeant Henson testified that the bag described by Speir was found in the Defendant's vehicle, and the ingredients to which Speir referred were found in the Defendant's residence. Lastly, Sergeant Henson stated that the information in the affidavit was fairly accurate. The only inaccuracy between Speir's statement and Sergeant Henson's affidavit is the presence of Todd Smith, the Defendant's brother. According to Sergeant Henson, Todd Smith was not involved in the conspiracy.

Upon searching the Defendant's residence, officers found several unused Ziploc cellophane bags, a digital scale, razor blades, and a one-eighth teaspoon measuring spoon, in addition to chemicals, peroxide, iodine and Red Devil lye, which are commonly used in making methamphetamine. Further, a detailed recipe of how to cook methamphetamine was also found in a black notebook. The first line of the

recipe called for the use of iodine and peroxide, and the second line of the recipe called for two scoops of Red Devil lye. In addition to the recipe, several names with telephone numbers were written in the book. There was also a letter in the book written and signed at the bottom by "Tammy," apparently the Defendant's wife. The content of Tammy's letter was not discussed at trial. The officers took pictures of the bottles that had once contained pseudoephedrine pills.

On cross-examination, Sergeant Henson testified that they did not find large quantities of the chemicals, peroxide, iodine, and lye that they believed were used in making methamphetamine and that these chemicals are commonly found in one's home. Additionally, Sergeant Henson stated that it did not seem like a big operation at the residence. Regarding the digital scale found in the residence, Sergeant Henson testified that it was typically used for small items and that it was found inside a bag with a large amount of paraphernalia which he assumed was used for measuring illicit narcotics.

In his brief to this court, the Defendant maintains that the State did not offer any evidence to support the contention that the Defendant and his wife, Tammy Smith, conspired to manufacture methamphetamine. Specifically, the Defendant complains that the recipe book on how to cook methamphetamine seized from his home is not enough for a trier of fact to conclude that he and his wife were going to enter into a conspiracy to manufacture methamphetamine. As such, the Defendant maintains that the jury could only speculate as to whether a conspiracy existed. Lastly, the Defendant asserts that only Speir's self-serving statement mentioned cooking methamphetamine.

The State, on the other hand, contends that Speir's statement was credible,

5

reliable, and accurate because it outlined the existence of the conspiracy as to the specific intent of the parties, identity of the parties, and gave detailed information regarding the Defendant's activities, most of which proved to be true. Specifically, the State points out that Speir was correct in describing the vehicle the Defendant would be driving, where he could be stopped, that he would possess drugs, and that precursors to the manufacturing of methamphetamine would be found in his residence. Further, the State notes that Speir described the bags seized from the Defendant in the traffic stop. Lastly, the State asserts that the black notebook, seized from the Defendant's residence which contained the directions for manufacturing methamphetamine, was circumstantial evidence to support Speir's statement that a conspiracy existed and that the Defendant's wife had knowledge of the manufacturing. The State concludes that the evidence shows a conspiracy between Speir and the Defendant and that it was reasonable for a jury to conclude that the conspiracy included the Defendant's wife.

Considering the testimony and evidence presented at trial, we find that the State met its burden of proving, beyond a reasonable doubt, that the Defendant conspired to manufacture methamphetamine and that the Defendant acted in furtherance of manufacturing methamphetamine. The evidence revealed that the chemicals necessary to manufacture methamphetamine were found in the Defendant's home. Although the chemicals found are common household chemicals, a recipe on how to manufacture methamphetamine was also found in the home and called for the specific chemicals found in the home. Additionally, we note that the Defendant offered no evidence to discredit the information obtained from Speir which was compiled in an affidavit by Sergeant Henson to obtain the search warrant. Lastly, the

6

jury could reasonably conclude that the Defendant's wife had knowledge of the manufacturing since she lived in the home and was in close contact with the manufacturing process. Also, the Defendant did not offer any evidence to controvert the allegation that the Defendant's wife or Speir was involved in the conspiracy. Accordingly, we find that the circumstantial evidence was sufficient to support the Defendant's conviction that he conspired with Speir and/or his wife to manufacture methamphetamine. Accordingly, the Defendant's conviction for conspiracy to manufacture methamphetamine is affirmed.

### Possession With Intent to Distribute Methamphetamine

The State had the burden of proving that the Defendant possessed methamphetamine with the intent to distribute same. La.R.S. 40:967(A)(1). In determining whether circumstantial evidence is sufficient to prove the intent to distribute a controlled dangerous substance, the Defendant refers this court to *State v. Hearold*, 603 So.2d 731, 735 (La.1992), wherein the supreme court stated:

> Intent is a condition of mind which is usually proved by evidence of circumstances from which intent may be inferred. *State v. Fuller*, 414 So.2d 306 (La.1982); *State v. Phillips*, 412 So.2d 1061 (La.1982); La.Rev.Stat. 15:445. In *State v. House*, 325 So.2d 222 (La.1975), this court discussed certain factors which are useful in determining whether circumstantial evidence is sufficient to prove the intent to distribute a controlled dangerous substance. These factors include (1) whether the defendant ever distributed or attempted to distribute the drug; (2) whether the drug was in a form usually associated with possession for distribution to others; (3) whether the amount of drug created an inference of an intent to distribute; (4) whether expert or other testimony established that the amount of drug found in the defendant's possession is inconsistent with personal use only; and (5) whether there was any paraphernalia, such as baggies or scales, evidencing an intent to distribute.

In the instant case, Sergeant Henson testified that the Defendant's vehicle was stopped upon receiving information that he possibly had a significant amount of

7

methamphetamine inside the vehicle. Deputy Kevin M. Lewis, a narcotics agent with the Natchitoches Parish Sheriff's Office, stated that State Trooper Steve Pezant initiated the stop of a vehicle driven by the Defendant's wife in which the Defendant and his two children were passengers.

Deputy Lewis testified that after the Defendant and his wife were secured, he and Deputy Jayson Linebaugh searched the Defendant's vehicle. As a result of the search, Deputy Lewis found a small zippered pouch on the right passenger floorboard area. According to Deputy Lewis, the pouch was in plain view. Deputy Lewis and Sergeant Henson testified that inside the pouch were several plastic bags which, according to Sergeant Henson, are typically used for distribution of drugs. Several butane lighters, snorting straws, and glass pipes were also in the pouch. Deputy Lewis and Sergeant Henson also noted that some of the bags, as well as a pipe, looked like they contained methamphetamine residue which was confirmed upon testing.

Deputy Lewis also stated that he found a plastic bag containing a pipe commonly used to ingest narcotics and a small plastic Ziploc bag containing approximately 6.3 grams of suspected methamphetamine. Both Deputy Lewis and Sergeant Henson testified that the Ziploc bag was found in the same general area as the pouch and was also in plain view. Deputy Lewis testified that money was seized from the Defendant's wife during the stop, and Sergeant Henson confirmed that it was $505.00 dollars.

In the Defendant's residence, $1,000.00 was retrieved from a safe located in the living area. The Defendant reported to Sergeant Henson that the money came from a settlement or something to that effect.

8

Sergeant Henson testified that in his experience, the amount of methamphetamine found, 6.3 grams, was indicative of distribution. Further, the capacity of the unused bags found in the pouch was also indicative of distribution. Lastly, Sergeant Henson noted that the condition of the methamphetamine that was found, a hard rocky substance in one solid piece, typically indicates that it was purchased from a larger source and is in a purer form than it is when it is sold on the street. He explained that the hard piece is first crushed down and mixed with a cutting agent and then placed in small cellophane bags for individual sale.

Alex King, a forensic chemist at the North Louisiana Crime Lab, testified that items in the instant matter were submitted for his review on June 22, 2006, and he compiled a thirteen-page report regarding his findings. Items 1A and C were determined to contain methamphetamine.

In his brief to this court, the Defendant maintains that the State failed to refute the very reasonable hypothesis that the Defendant had the methamphetamine for his own personal use. The Defendant acknowledges Sergeant Henson's testimony that the amount seized, 6.3 grams, is not indicative of personal use, but contends that Sergeant Henson failed to take into account that the amount, valued at $600.00 to $700.00, was probably to be shared by more than one individual since glass pipes and straws were located in the Defendant's home. The Defendant maintains that this indicates that someone in the home was a heavy methamphetamine user. The Defendant also argues that the empty bags with methamphetamine residue in them are more indicative of a user than a distributor.

Next, the Defendant contends that the State did not offer evidence to prove that the Defendant ever distributed or attempted to distribute methamphetamine, that he

had a history of engaging in narcotic distribution, or that he intended to sell, or had sold, methamphetamine. Lastly, the Defendant argues that the State did not disprove that the Defendant was simply a user, as he was never asked about his personal use of methamphetamine.

First, with regard to distribution, the law does not distinguish between selling the drugs, giving them away, or sharing them. Considering same, the State argues that if the Defendant purchased the drugs with the intent to "share" them with his friends, then he would be guilty of distributing the drugs.

Secondly, we note that the Defendant elected not to testify, thus the State did not have the opportunity to ask the Defendant about his personal use of methamphetamine. Further, the Defendant did not present any evidence to support his claim that he possessed the methamphetamine for personal use only.

Lastly, applying the factors enumerated in *House*, 325 So.2d 222, to the instant case, the Defendant is correct in that there was no evidence presented at trial indicating that he has ever distributed or attempted to distribute methamphetamine. However, the testimony of Sergeant Hensen indicates that the methamphetamine seized was in a form usually associated with possession for distribution to others. Additionally, Sergeant Henson opined that the amount, 6.3 grams, was significant enough to create an inference of an intent to distribute and was inconsistent with personal use only. Lastly, Sergeant Henson stated that the paraphernalia, including baggies and a scale, evidenced the Defendant's intent to distribute.

Although there was no evidence that the Defendant was a known distributor of methamphetamine, we find that the State presented sufficient evidence to satisfy the remaining *House* factors. Accordingly, the Defendant's conviction for possession

10

with intent to distribute methamphetamine is affirmed.

*Clandestine Lab*

As provided in La.R.S. 40:983(A):

Creation or operation of a clandestine laboratory for the unlawful manufacture of a controlled dangerous substance is any of the following:

(1) The purchase, sale, distribution, or possession of any material, compound, mixture, preparation, supplies, equipment, or structure with the intent that it be used for the unlawful manufacture of a controlled dangerous substance.

(2) The transportation or arranging for the transportation of any material, compound, mixture, preparation, supplies, or equipment with the intent that such material, compound, mixture, preparation, supplies, or equipment be used for the unlawful manufacture of a controlled dangerous substance.

(3) The distribution of any material, compound, mixture, preparation, equipment, supplies, or products, which material, compound, mixture, preparation, equipment, supplies, or products have been used in, or produced by, the unlawful manufacture of a controlled dangerous substance.

(4) The disposal of any material, compound, mixture, preparation, equipment, supplies, products, or byproducts, which material, compound, mixture, preparation, equipment, supplies, products, or byproducts have been used in, or produced by, the unlawful manufacture of a controlled dangerous substance.

In the instant case, Sergeant Henson testified that as a result of the vehicle search and items found therein, he applied for a search warrant of the Defendant's residence. Sergeant Henson, Trooper Steve Pezant, and Agent Glenn Sers went to the residence with the Defendant's wife. Inside the Defendant's bedroom, a black pouch was found which contained drug paraphernalia consisting of several unused Ziploc cellophane bags, a digital scale, several lighters, snorting straws, razor blades, and a one-eighth teaspoon measuring spoon. The officers also found peroxide, iodine, and Red Devil lye which Sergeant Henson stated are commonly used in making

11

methamphetamine. Additionally, a detailed recipe of how to cook methamphetamine was found. The first line of the recipe called for the use of iodine and peroxide, and the second line of the recipe called for two scoops of Red Devil lye. The officers also took pictures of bottles that had once contained pseudoephedrine pills.

On cross-examination, Sergeant Henson testified that they did not find large quantities of the chemicals, peroxide, iodine, and lye that they believed were used in making methamphetamine and that these chemicals are commonly found in one's home. Additionally, Sergeant Henson stated that it did not seem like a big operation at the residence. With regard to the digital scale found in the residence, Sergeant Henson testified that it was typically used for small items and that it was found inside a bag with a large amount of paraphernalia which he assumed was used for measuring illicit narcotics. Sergeant Henson agreed that all of the items found are common household items and could be legally purchased. However, some of the items had suspected methamphetamine in them.

In the Defendant's brief to this court, he argues that Sergeant Henson was not qualified as an expert in the field of investigating methamphetamine cases and complains that Sergeant Henson has participated in only fifteen cases involving methamphetamine labs. However, the statute only requires that the Defendant possess "any material, compound, mixture, preparation, supplies, equipment, or structure with the intent that it be used for the unlawful manufacture of a controlled dangerous substance." La.R.S. 40:983(A)(1). Additionally, the record reveals that Sergeant Henson has been a member of the Drug Task Force since 1998 and is certified and/or qualified to investigate methamphetamine cases. With regard to training, Sergeant Henson stated that he is a HASMAT specialist and had trained in

12

Anniston, Alabama, the LSU fire academy, the State Police training academy, and in Quantico, Virginia, taking DEA "clan lab" technician courses. He added that he has used this training to investigate methamphetamine cases and has been involved in the investigation of approximately fifteen cases involving actual methamphetamine labs. Sergeant Henson estimated, however, that he has been involved in hundreds of methamphetamine arrest cases. Accordingly, we find, unequivocally, that Sergeant Henson was trained and qualified to identify the items possessed by the Defendant and used to manufacture methamphetamine.

Next, the Defendant refers to Sergeant Henson's testimony wherein he states that the Defendant's home did not appear to be a big operation, that the chemicals seized are commonly found in homes, and that there were no large amounts of the chemicals. We note that while the Defendant's assertion is correct, the fact remains that the chemicals found were specifically listed as the ingredients in the recipe to manufacture methamphetamine found in the Defendant's home. Further, the statute does not require that the operation be large or that there be large amounts of chemicals to be considered a clandestine lab.

Lastly, the Defendant maintains that Sergeant Henson did not testify as to any chemical odor in the residence that is normally associated with methamphetamine labs nor did he testify that there were instruments present at the residence which are commonly used in manufacturing methamphetamine, such as propane tanks, Pyrex beakers and hoses, ammonia nitrate, and pseudoephedrine. In support of this argument, the Defendant refers to *State v. Hemphill*, 41,526 (La.App. 2 Cir. 11/17/06), 942 So.2d 1263, *writ denied*, 06-2976 (La. 3/9/07), 949 So.2d 441, wherein investigating officers noticed the smell of ether, a chemical often used to

13

manufacture methamphetamine, as they approached a suspected methamphetamine lab.

We note, however, that *Hemphill* is not a precedent for requiring the presence of a chemical odor or particular instruments or particular chemicals to establish the existence of a clandestine lab. Furthermore, in the instant case, Sergeant Henson testified that there are several different ways to manufacture methamphetamine and that the particular recipe in the instant case is called the "cold method" because red phosphorous and iodine are used. He explained that the cold method does not involve anhydrous ammonia. Additionally, empty containers of pseudoephedrine were found on the premises, suggesting that the chemical, a component of methamphetamine, had been present in the home and was consistent with the information in the affidavit for the search warrant. Consequently, we find that the evidence presented at trial was sufficient to establish the presence of a clandestine lab at the Defendant's residence.

## CONCLUSION

For the reasons set forth above, all of the Defendant's convictions are affirmed.

**AFFIRMED.**