MADELEINE M. LANDRIEU, Judge.
hThe defendant, Isaac Ansah, was convicted of possession of marijuana with the intent to distribute and sentenced to five years at hard labor. For the following *250 reasons, we affirm Mr. Ansah’s conviction and sentence.
PROCEEDINGS BELOW
Mr. Ansah was charged by bill of information on December 9, 2009, with possession of marijuana with the intent to distribute, a violation of Louisiana Revised Statute 40:966. On December 14, 2009, Mr. Ansah pled not guilty to the charge and filed motions to suppress evidence and statements, which were denied. Following a bench trial on March 3, 2010, Mr. Ansah was found guilty as charged. He was sentenced to five years at hard labor with four years being suspended and two years active probation. This appeal follows.
FACTS
Officer Raymond Delvalle testified at trial that he was assigned to the Amtrak Police Department on October 10, 2009. His duties included screening passengers by checking identifications and boarding passes. On that day, he ^noticed Mr. Ansah, who appeared to be concerned by the officer’s presence, waiting to board a train. When Mr. Ansah handed his ticket to him, Officer Delvalle noticed that Mr. Ansah’s hands were shaking. Officer Del-valle testified that he noticed that the initials on the name tag on Mr. Ansah’s bag did not match the name on Mr. Ansah’s ticket. He asked Mr. Ansah to step out of the line and continued boarding other passengers. Once all of the passengers had boarded the train, Officer Delvalle asked Mr. Ansah whether he had any weapons or dangerous materials on him. Mr. Ansah responded that he did not. After asking for and receiving Mr. Ansah’s consent, Officer Delvalle searched the bag. Officer Delvalle discovered a brick-shaped object known to him to be a method used to traffic controlled dangerous substances.[1] Officer Delvalle placed Mr. Ansah under arrest, advised him of his Miranda rights, and transported him to a secure office within the Amtrak station. Mr. Ansah told Officer Delvalle that he was not aware that the marijuana was in the bag and that the marijuana did not belong to him. A secondary search of the bag by border patrol agents revealed additional “bricks” of marijuana. According to Officer Del-valle, Mr. Ansah was carrying approximately seven pounds of marijuana. Officer Delvalle stated that throughout the entire questioning, Mr. Ansah continued to insist that the narcotics did not belong to him.
Officer Harry Stovall testified at trial that he was employed in the Narcotics Unit of the New Orleans Police Department on October 10, 2009. Although he did not participate in the questioning of Mr. Ansah, he was present in the office during Rthe questioning. He heard Mr. Ansah explain that he was carrying the marijuana for someone else. Officer Sto-vall did not recall Mr. Ansah saying that the narcotics did not belong to him.
Mr. Ansah testified that at the time of his arrest he was living in Arlington, Virginia. He testified that he was visiting his girlfriend and children in Houston, Texas, and had lost his airplane ticket. Needing a way to get back to Virginia, he purchased a train ticket that departed from Houston to Virginia, with a stop in New Orleans. Mr. Ansah said that on the morning of his arrest, he was dizzy from taking body building supplements, and he needed to eat. He purchased food from a Subway restaurant in the terminal and then stood in line to board the train. Mr. Ansah testified that, at the request of the *251 officers, he open the bag and saw them remove a “brick” of marijuana. Mr. Ansah said that he was taken to another location, at which time more marijuana was found in the bag he was carrying. He testified that his girlfriend’s neighbor, whom he had been friends with for four years, asked him to return the bag containing the narcotics to the neighbor’s ex-girlfriend who also lived in Virginia.
On cross-examination, Mr. Ansah testified that he was not traveling with his own bag because he had clothes at his girlfriend’s home in Houston. He stated that he believed and trusted that the neighbor was sending clothes to his ex-girlfriend, and upon arrest, he offered to provide the officers with the name and address of the neighbor.
RERRORS PATENT
A review of the record for errors patent reveals none.
ASSIGNMENTS OF ERROR
Mr. Ansah asserts the following assignments of error: that the district court erred in denying his motion to suppress the evidence; that the district court erred in denying his motion to suppress his statements; and that the verdict is contrary to the law and evidence.
DISCUSSION
I. Sufficiency of Evidence
We first consider Mr. Ansah’s assertion that the verdict is contrary to the law and evidence. “When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence.” State v. Hearold, 603 So.2d 731, 734 (La. 1992). In this assignment of error, Mr. Ansah asserts that there was no evidence at trial to establish that he had the intent to distribute the marijuana that was found in the bag he was carrying. Specifically, Mr. Ansah argues that the actual weight of the marijuana recovered was unknown, and the State did not offer any evidence that the actual weight of the marijuana at issue would be inconsistent with personal use. We disagree.
We review the sufficiency of the evidence under the Jackson v. Virginia standard “which dictates that to affirm a conviction ‘the appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, |swas sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.’” State v. Vessel, 2012-1543, p. 2 (La.App. 4 Cir. 1/10/14), 131 So.3d 523, 525.
In support of his argument that the evidence was insufficient to support his conviction, Mr. Ansah relies on State v. House, 325 So.2d 222 (La.1975). In House, the Court set aside Mr. House’s conviction and sentence of possession of marijuana with the intent to distribute. Mr. House was found with one gram of marijuana consisting mainly of stems and seeds, one marijuana cigarette in his pocket, and twenty marijuana cigarettes in his boot.
The Court concluded that there are “two elements in the crime of possession of marijuana with the intent to distribute. Obviously, one element is possession and the other is the intent to distribute. One element of the crime cannot, without more, be said to supply ‘some evidence’ of the other required element of the offense.” Id. at 226. The Court cited certain factors that are relevant in determining whether the intent to distribute existed, including: “(1) that the defendant ever distributed or attempted to distribute any marijuana; (2) that the marijuana was in a form usually associated with marijuana possessed for *252 distribution to others; (3) that the amount was such as to create a presumption of intent to distribute; (4) of expert or other testimony that such an amount as found on the defendant is inconsistent with personal use only; and (5) of any paraphernalia, such as baggies or scales, evidencing an intent to distribute.” Id. at 225.
|fiWhile Mr. Ansah is correct in relying on the five elements cited in State v. House, the issue must be viewed in the light most favorable to the prosecution. We find that a rational trier of fact could have concluded that Mr. Ansah possessed the marijuana with the intent to distribute. Intent to distribute may be established based solely on the amount found only when the quantity is so large that no other inference is possible. Hearold, 603 So.2d at 735-736. “This court has consistently held intent to distribute can be inferred from the amount of narcotics possessed ... It is well settled that the weight of the evidence is within the fact finder’s discretion.” State v. Ash, 97-2061 (La.App. 4 Cir. 2/10/99), 729 So.2d 664, 668.
The evidence introduced at trial established that the marijuana was found in Mr. Ansah’s possession, that it was packaged in a way consistent with narcotics trafficking, and that the total weight was estimated to be approximately seven pounds. We find that the trial court’s determination that Mr. Ansah had the intent to distribute the marijuana was not unreasonable in view of this evidence.
II. Motions to Suppress the Evidence and the Statements
In this assignment of error, Mr. Ansah asserts that the trial court erred in denying his motions to suppress the evidence and the statements he made to officers. Mr. Ansah argues that his detention was illegal because Officer Delvalle had no reasonable suspicion or probable cause to stop him, and therefore, the evidence and statements were obtained illegally and should have been suppressed. We disagree.
|7A trial court’s ruling on a motion to suppress is reviewed under the abuse of discretion standard. State v. Wilson, 2012-0920, p. 5 (La.App. 4 Cir. 6/12/13), 119 So.3d 843, 847. The issue here is whether the interaction between Mr. Ansah and Officer Delvalle was an “investigatory stop.” The Supreme Court discussed interactions between police officers and citizens in Florida v. Bostick, 501 U.S. 429, 434, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991), stating:
Our cases make it clear that a seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free “to disregard the police and go about his business.” California v. Hodari D., 499 U.S. 621, 628, 111 S.Ct. 1547, 1552, 113 L.Ed.2d 690 (1991), the encounter is consensual and no reasonable suspicion is required. The encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual nature. The Court made precisely this point in Terry v. Ohio, 392 U.S. 1, 19, n. 16, 88 S.Ct. 1868, 1879, n. 16, 20 L.Ed.2d 889 (1968): “Obviously, not all personal intercourse between policemen and citizens involves ‘seizures’ of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a ‘seizure’ has occurred.”
It is well settled that the police do not need probable cause to arrest or reasonable suspicion for an investigatory stop every time they approach a citizen in a public place. State v. Britton, 1993-1990, p. 2 (La.1/27/94), 633 So.2d 1208, 1209 *253 (citmg State v. Belton, 441 So.2d 1195 (La.1983); State v. Williams, 421 So.2d 874 (La.1982); State v. Neyrey, 383 So.2d 1222 (La.1980); State v. Shy, 373 So.2d 145 (La.1979)).
In United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), the defendant sought to suppress narcotics found in her bag by federal agents at an airport. The federal agents stopped Ms. Mendenhall because her Isbehavior fit that of a drug courier. After learning that she was traveling under an alias, Ms. Mendenhall was asked to accompany the agents to another area of the airport and later consented to the search of her bag, which revealed heroin. The Court concluded that Ms. Mendenhall had not been illegally seized, reasoning that “a person has been ‘seized’ within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.” Mendenhall, 446 U.S. at 554, 100 S.Ct. at 1877. In that case:
[t]he agents wore no uniforms and displayed no weapons. They did not summon the respondent to their presence, but instead approached her and identified themselves as federal agents. They requested, but did not demand to see the respondent’s identification and ticket. Such conduct without more, did not amount to an intrusion upon any constitutionally protected interest. The respondent was not seized simply by reason of the fact that the agents approached her, asked her if she would show them her ticket and identification, and posed to her a few questions. Nor was it enough to establish a seizure that the person asking the questions was a law enforcement official.
Mendenhall, 446 U.S. at 555, 100 S.Ct. at 1877.
More recently, in State v. Spells, 2010-1024 (La.App. 4 Cir. 1/19/11), 56 So.3d 1073, this court held that a similar interaction between police officers and Mr. Spells was not an investigatory stop. In Spells, the defendant was stopped by NOPD detectives who were checking passengers arriving at the Amtrak station in order to determine if they were in possession of illegal or dangerous substances. Officers noticed Mr. Spells halt his approach to the terminal and watch the search of another passenger. Mr. Spells appeared concerned by the officers’ presence. A detective identified himself to Mr. Spells and asked Mr. Spells for his | ¡¡identification and ticket stub. As he handed over the ticket, the officer noticed that Mr. Spells’ hand was shaking. The officer explained that they were conducting “voluntary, consensual” searches of passengers. Mr. Spells admitted that he was carrying a small amount of marijuana in his pocket. The officer retrieved the marijuana from Mr. Spells’ pocket, placed him under arrest, and Mirandized him. He was taken to an office in the terminal, where he admitted to having more marijuana in his bag. The trial court denied Mr. Spells’ motion to suppress the evidence. This court affirmed the trial court’s denial of the motion to suppress, finding that the initial interaction was not an investigatory stop.
The instant case is similar to Spells. The interaction between Officer Delvalle and Mr. Ansah was not an investigatory stop. Officer Delvalle’s job that day was to check tickets and identifications of passengers boarding the trains. When he noticed that Mr. Ansah appeared to be nervous and that the name on his bag was not the same as the name on his ticket, Officer Delvalle asked Mr. Ansah to step out of line. This was not a seizure of Mr. An-sah’s person. The officer then asked for Mr. Ansah’s consent to search his bag. *254 Mr. Ansah consented. Once the “brick” of marijuana was discovered, Officer Delvalle had probable cause to arrest Mr. Ansah.
Because the detention and arrest of Mr. Ansah were not illegal, we find that the trial court did not err in denying Mr. Ansah’s motions to suppress the evidence and the statements.
^CONCLUSION
For the foregoing reasons, we affirm Mr. Ansah’s conviction and sentence.
AFFIRMED.

. A field test conducted by Officer Delvalle confirmed that the substance inside the brick-shaped object was marijuana.