PAUL A. BONIN, Judge.
[ ]After the trial court denied his motion to suppress evidence, Corey Spells, the defendant, entered a guilty plea to the offense of possession with intent to distribute marijuana under State v. Crosby and appeals the ruling. The trial court found that Mr. Spell’s initial interaction with the police was consensual such that suppression of the evidence was unwarranted. Because we conclude that the trial judge did not abuse her discretion in that finding, we affirm Mr. Spells’ conviction and sentence.[1]
I
The prosecution by bill of information charged Mr. Spells with possession with intent to distribute marijuana. See La. R.S. 40:966 A(2). As noted above, the trial court denied Mr. Spells’ motion to suppress the evidence. After the trial court’s evidentiary ruling, Mr. Spells entered a plea of guilty as charged under State v. Crosby, 338 So.2d 584 (La.1976), thereby reserving his right to challenge on appeal the denial of his motion to suppress the evidence. Mr. Spells was then sentenced to five years in the custody of the Department of Corrections. Pursuant to La. C.Cr.P. art. 893, the sentence was suspended and Mr. Spells was placed on three years active probation and fined seven hundred dollars.
_kll
Mr. Spells did not testify at the suppression hearing. See La.C.Cr.P. art. 703 E(l). Thus, following testimony by the police is uncontroverted.
Narcotics detective Harry Stovall of the New Orleans Police Department was working at that city’s Union Passenger Terminal with Detective Raymond Delvalle of the Amtrak Police Department, checking passengers who were arriving in New Orleans by bus or train in order to determine whether they were in possession of illegal or dangerous substances. Det. Sto-vall explained that they approached individuals, explained what they were doing, and asked for their identification and ticket, as well as asking whether they would voluntarily consent to having their luggage searched.
Det. Stovall noticed Mr. Spells as he disembarked from a train, because he stopped his approach to the terminal and watched while they conducted a check of another individual; Mr. Spells appeared to be concerned over the officers’ presence. Det. Stovall found the defendant’s behavior suspicious because the majority of people exiting the train continued their approach to the terminal without stopping. Because he was in plainclothes, Det. Sto-vall identified himself to Mr. Spells as Mr. Spells approached, and the detective presented his badge, which was around his neck.
Det. Stovall asked Mr. Spells for his identification and his ticket stub because he wanted to ascertain whether the identification and the name on the ticket were in the same name. As Mr. Spells handed over his information, Det. Stovall saw that his hand was shaking. Det. Stovall ex *1075 plained to Mr. Spells that they were checking passengers as they entered the city to ensure that people were | snot bringing illegal or dangerous items with them. Det. Stovall explained that they were conducting “voluntary, consensual” searches, and that Mr. Spells had the right to refuse. Det. Stovall then asked him whether he was in possession of anything he should not have.
Mr. Spells verbally admitted that he had a small amount of marijuana in his pocket. Det. Stovall then reached into Mr. Spells’ right front pants pocket and retrieved a small amount of marijuana. Det. Stovall then informed the defendant that he was under arrest, placed him in handcuffs, and Mirandized him. Det. Stovall brought Mr. Spells to an office in the terminal, where he asked Mr. Spells whether he had anything else other than what had been seized from his pocket, and Mr. Spells informed him that he had some more marijuana in his bag. Det. Delvalle opened the defendant’s bag and retrieved two extra-large plastic bags of marijuana.
At that time, Det. Stovall informed Mr. Spells of the additional charges. Mr. Spells then explained that he had come upon hard times and was trying to make some money. Det. Stovall then asked Mr. Spells if he would record his statement on a Rights of Arrestee form. Mr. Spells signed the form and wrote in the remarks section, “I was in possession of marijuana.”
Ill
Mr. Spells argues in his sole assignment of error that he was subjected to an investigatory stop by police without reasonable suspicion and that the evidence against him must be suppressed. We disagree, however, because Mr. Spells was not “seized” sufficient to implicate the Fourth Amendment.
14At the outset, we note that a trial court’s ruling on a motion to suppress is entitled to great weight and will not be set aside unless there is an abuse of that discretion. State v. Wells, 08-2262, p. 5 (La.7/6/10), 45 So.3d 577, 581. The prosecution bears the burden of proving the admissibility of evidence seized without a warrant when the legality of a search or seizure is placed at issue by a motion to suppress evidence. La.C.Cr.P art. 703 D; State v. Hunt, 09-1589, pp. 6-7 (La.12/1/09), 25 So.3d 746, 752; see also State v. Jason, 10-0658, pp. 2-3 (La.App. 4 Cir. 12/1/10), 53 So.3d 508, 509 (for an extended discussion of the Fourth Amendment’s warrant requirement and the recognition of consent as an exception thereto).
The issue in this case is whether the encounter between Mr. Spells and police may be characterized as an “investigatory stop.” The United States Supreme Court has recognized that encounters between citizens and police come in a wide variety:
Street encounters between citizens and police officers are incredibly rich in diversity. They range from wholly friendly exchanges of pleasantries or mutually helpful information to hostile confrontations of armed men involving arrests, or injuries, or loss of life. All confrontations are not of a piece. Some of them begin in a friendly enough manner, only to take a different turn upon the injection of some unexpected element into the conversation. Encounters are initiated by the police for a wide variety of purposes, some of which are wholly unrelated to a desire to prosecute for crime.
Terry v. Ohio, 392 U.S. 1, 13, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
Police officers “have the right to engage anyone in conversation, even without reasonable grounds to believe that they have committed a crime.” State v. Johnson, 01-2436, p. 3 (La.1/25/02), 806 *1076 So.2d 647, 648 (quoting State v. Duplessis, 391 So.2d 1116, 1117 (La.1980)). As long as the person approached by |sa law enforcement officer remains free to disregard the encounter and walk away, the foregoing constitutional provisions are not implicated. State v. Tucker, 626 So.2d 707, 710 (La.1993); State v. Belton, 441 So.2d 1195, 1199 (La.1983).
In Florida v. Bostick, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991), in discussing how all interactions between the police and citizens will not necessarily implicate the Fourth Amendment, the United States Supreme Court explained:
Our cases make it clear that a seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free “to disregard the police and go about his business,” California v. Hodari D., 499 U.S. 621, 628, 111 S.Ct. 1547, 1552, 113 L.Ed.2d 690 (1991), the encounter is consensual and no reasonable suspicion is required. The encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual nature. The Court made precisely this point in Terry v. Ohio, 392 U.S. 1, 19, n. 16, 88 S.Ct. 1868, 1879, n. 16, 20 L.Ed.2d 889 (1968): “Obviously, not all personal intercourse between policemen and citizens involves ‘seizures’ of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a ‘seizure’ has occurred.”
Bostick, 501 U.S. at 434-35, 111 S.Ct. 2382.
It is settled that the police do not need probable cause to arrest or reasonable suspicion for an investigatory stop every time they approach a citizen in a public place. State v. Britton, 93-1990, p. 2 (La.1/27/94), 633 So.2d 1208, 1209 (citing State v. Belton, 441 So.2d 1195 (La.1983); State v. Williams, 421 So.2d 874 (La.1982); State v. Neyrey, 383 So.2d 1222 (La.1980); State v. Shy, 373 So.2d 145 (La.1979)). In other words, “it is clear that the mere approaching of a citizen by a law enforcement officer and posing questions to that person is not a seizure.” Thomas K. Clancy, The Fourth Amendment: Its History and Interpretation, pp. 154-155 (2008) (citations omitted). Police have a right to address a person in | fipublic and ask questions, although police have no corresponding right to compel answers. See Davis v. Mississippi, 394 U.S. 721, 727 n. 6, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969). “As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person’s liberty or privacy as would under the Constitution require some particularized and objective justification.” United States v. Mendenhall, 446 U.S. 544, 553-54, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).
In Mendenhall, two DEA agents stopped the defendant after concluding that her behavior fit the profile of a drug courier in several respects. The agents approached Mendenhall, identified themselves as federal agents, and asked to see her identification and airline ticket. This revealed that she was traveling under an alias. The officers returned her ticket and identification and asked her if she would accompany them to their office for further questioning. Mendenhall complied, and once in the office she agreed to a search of her baggage and of her clothing. A small package of heroin was found in the search.
The Court stated that a person is “ ‘seized’ within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.” Mendenhall, 446 U.S. at 554-555, 100 S.Ct. 1870. The Court noted the following examples of *1077 circumstances that might indicate a seizure:
[T]he threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer’s request might be compelled.
Mendenhall, 446 U.S. at 554, 100 S.Ct. 1870. The Court then concluded that Mendenhall had not been seized even though she was not expressly told that she was free to move on her way, stating:
|7On the facts of this case, no “seizure” of the respondent occurred. The events took place in the public concourse. The agents wore no uniforms and displayed no weapons. They did not summon the respondent to their presence, but instead approached her and identified themselves as federal agents. They requested, but did not demand to see the respondent’s identification and ticket. Such conduct without more, did not amount to an intrusion upon any constitutionally protected interest. The respondent was not seized simply by reason of the fact that the agents approached her, asked her if she would show them her ticket and identification, and posed to her a few questions. Nor was it enough to establish a seizure that the person asking the questions was a law enforcement official.
Mendenhall, 446 U.S. at 555, 100 S.Ct. 1870. Because she had not been illegally detained, the evidence seized was admissible against her.
In this appeal, Mr. Spells characterizes his encounter with the detectives as an illegal detention for which there was no reasonable suspicion. He further contends that the lack of reasonable suspicion for the stop tainted any consent he may have later given.
As in Mendenhall, the events took place in public; the agents were in plainclothes; Mr. Spells was not summoned to the detectives’ presence; and Det. Stovall requested to see the defendant’s identification and ticket stub. The detectives were not in uniform and they did not show their weapons. Det. Stovall made sure that Mr. Spells was aware that his interaction with him was voluntary and that he had the right to move on. These circumstances are somewhat less intrusive than those in Mendenhall — where the passenger was never informed of her right to conclude the inquiry and where the passenger was relocated to an office prior to consenting to a search of her luggage. Mr. Spells was informed in a non-threatening manner that he was free to refuse, and he could have reasonably believed that he was free to leave.
IsAccordingly, we find no error in the trial court’s determination that the initial encounter between Mr. Spells and the police did not constitute an investigatory stop. The trial court did not abuse its discretion in denying the motion to suppress, and the physical evidence of the marijuana would have been properly admitted at trial had Mr. Spells elected to proceed to trial by jury or judge.
DECREE
We affirm Mr. Spells’ conviction and sentence.
AFFIRMED
BELSOME, J., Concurs With Reasons.

. We have, as we always do, reviewed the record for errors patent, and we have found none. See La.C.Cr.P. art. 920.