608 So.2d 266 (1992)
STATE of Louisiana, Plaintiff-Appellee,
v.
Delister WILLIAMS, Defendant-Appellant.
No. Cr 92-102.
Court of Appeal of Louisiana, Third Circuit.
November 4, 1992.
*268 Ron Ware, Public Defender Office, Lake Charles, for defendant-appellant.
Glen Alexander, Dist. Atty., Cameron, for plaintiff-appellee.
Before STOKER and KNOLL, JJ., and MARCANTEL,[*] J. Pro Tem.
KNOLL, Judge.
Delister Williams appeals his jury conviction for violations of LSA-R.S. 40:966(A), possession of marijuana with the intent to distribute, and LSA-R.S. 40:967(A), possession of cocaine with the intent to distribute. The sentencing court imposed ten years at hard labor on each conviction to run concurrently. Defendant appeals, relying on two assignments of error. We affirm.

FACTS
On December 15, 1988, Deputy Theos Duhon of the Cameron Parish Sheriff's Office received information from a confidential informant that defendant had travelled to Texas to obtain and transport illegal drugs to Cameron, Louisiana that same day. Deputy Duhon conveyed this information to two other deputies, Jerry Constance and Michael Hebert. Throughout the day, the deputies repeatedly passed defendant's trailer, waiting for defendant to return. At approximately six o'clock p.m., Deputies Constance and Hebert stopped at defendant's trailer when they noticed a vehicle parked outside.
As both deputies approached the trailer, they could see defendant through an open window, standing in the kitchen. After the deputies knocked on the front door, identified themselves and requested entry, defendant requested that they wait so that he could put on a pair of pants. Defendant then began walking to the rear of the trailer. Fearing that defendant might attempt to flee, Deputy Constance walked around the trailer and waited by the back door. Moments later, defendant returned to the front door and allowed Deputy Hebert to enter the trailer. Deputy Hebert signaled that he had gained entry, and Deputy Constance then walked through the front door, into the living area. There is contradictory evidence as to whether Deputy Constance knocked.
*269 As Deputy Hebert was speaking with defendant, Deputy Constance spotted what appeared to be a butt of a marijuana cigarette and a marijuana seed in an ashtray on a coffee table in plain view in defendant's living room. Constance testified that he was approximately three feet away from the ashtray.
The deputies arrested defendant and advised him of his Miranda rights. After defendant refused to consent to a search of his trailer, Deputy Hebert obtained a search warrant. To support issuance of the search warrant, the deputy's affidavit relied on the information obtained from the confidential informant and the discovery of the marijuana cigarette butt. In the meantime, Deputy Constance transported defendant to the sheriff's office where he was booked on the charge of possession of marijuana.
After defendant was booked, he was returned to his trailer while Deputies Constance, Hebert, and Duhon executed the search warrant. The deputies found drug paraphernalia and, as confirmed by subsequent drug testing, 199 marijuana cigarettes and 98 small, clear plastic bags of cocaine.
Prior to trial on the merits, defendant filed a motion to suppress both the marijuana cigarette butt found in plain view and the drugs and drug paraphernalia recovered from the execution of the search warrant. Defendant unsuccessfully contended that because the deputies' entry into the trailer was unauthorized, the "plain view" exception would not apply to the marijuana cigarette butt. Defendant's contention that the search warrant was defective also failed. It is these issues that he raises on appeal.

MOTION TO SUPPRESS
The first issue on appeal is whether the trial court erred in denying defendant's motion to suppress incriminating physical evidence, namely, a marijuana cigarette butt allegedly found in plain view and other drugs and drug paraphernalia found in a subsequent search of the premises.
In attacking the legality of the seizure of the marijuana cigarette butt, defendant contends that the State cannot rely on the "plain view" doctrine because the officers' entry into the trailer was unauthorized, and the discovery of the incriminating evidence was not inadvertent.
From the outset, we note that in 1990 the United States Supreme Court abandoned the requirement of the plain view doctrine established in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), that "the evidence be discovered inadvertently." Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). However, the first and third prongs of the Coolidge test remain intact. Thus, the two elements that must be satisfied in order for a court to determine whether an object observed in plain view has been seized lawfully are: 1) that the officer who observes the object has a lawful right of access to it; and, 2) that the object's incriminating nature be immediately apparent.
The contraband nature of the marijuana cigarette butt was immediately apparent to Deputy Constance when he glanced down and saw it in an ashtray on a coffee table no more than three feet away. This first factor is uncontested and is easily satisfied. Therefore, the remaining issue is whether the deputies legally entered the trailer.
Louisiana courts have long recognized that police may lawfully knock on the door of a suspect's home and request entry. State v. Oliver, 448 So.2d 156, 158-59 (La. App. 5th Cir.1984). No showing of probable cause is necessary, as the police, just as any private citizen, are free to approach any residence and request entry. Id.
Elaborating on this topic, our Louisiana Supreme Court stated:
"Knocking at the door violated no right of privacy; that single action by the police did not infringe on defendant's `right to be let alone.' It is an almost implicit understanding and custom in this country that, in the absence of signs or warning, a residence may be approached and the occupants summoned to the door by knocking.

*270 Defendant was free to refuse to open the door or to slam it shut once opened. His freedom of movement was never infringed upon and no search or seizure occurred except on the basis of defendant's voluntary actions."
State v. Sanders, 374 So.2d 1186, 1189 (La.1979).
In the case sub judice, the record shows that Deputy Hebert and Deputy Constance entered defendant's trailer pursuant to defendant's consent. Deputy Hebert entered the trailer only after defendant opened the door and allowed him entry. After Deputy Hebert had gained entry, and the threat of defendant fleeing through the back door ceased, Deputy Constance entered the trailer. According to both officers, at no time did defendant deny them entry to the living area, object to their presence, or request that they leave. Additionally, Deputy Hebert described defendant as very cooperative until they arrested him and requested to search the trailer.
Defendant's assertion that the deputies demanded entry to the trailer is contradicted by both the circumstances surrounding the initial police encounter and his own testimony. Concerning the initial contact with the officers, the defendant testified as follows:
"Q. No. I'm sorry. What did they say?
A. They say let me in.
Q. Did they tell you they were police... from the sheriff's office?
A. No. No, they didn't tell me that. And this way here, with ... I said, well, let me put on some clothes. He said no. He say you all right; say ain't nobody but me. Still didn't tell me he was a policeman. But regardless of who he were, I know I hadn't put anything, I didn't have anything, because I hadn't even went to the bathroom. I needed to go there. So he said no, you can come on, said ain't nobody but me. So I goes, and I opened the door. I didn't know anything was in the house, or I guess I wouldn't have opened the door. You know, I didn't know what was there, because never had time to go to the bathroom. So I opened the door up, and he come ...
Q. You let him in?
A. Yes, sir.
Q. Did you recognize him to be a policeman?
A. After he got in he told me who he were. So with him telling me who he were, I said, well, I said what you need with me."
Counsel's statement that the defendant was "overcome by implied and expressed police authority," is unsubstantiated. The defendant, by his own admission, voluntarily opened the door to his trailer and allowed the officers to enter. As brought out by way of impeachment, the defendant admitted, in an earlier trial, that he allowed the officers to enter his trailer. The defendant previously testified as follows:
"Q. When the deputies came to your house, you let them in, didn't you?
A. Yes, ma'am.
Q. You didn't tell them that they could not come in?
A. No, ma'am.
Q. They asked your permission before they came in; is that correct?
A. Yes, ma'am."
Thus we find that the evidence supports a finding that defendant consented to the officers' entry and that the officers were lawfully inside the trailer.
Accordingly, we find that elements of the Horton test were satisfied, and that the marijuana cigarette butt was lawfully seized under the plain view exception of the warrant requirement of the Fourth Amendment. Therefore, we find that the trial court correctly denied defendant's motion to suppress that evidence.
In further support of his argument that the trial court erred in denying his motion to suppress, defendant avers that the search warrant lacks probable cause because it was based on: 1) allegations concerning illegally seized contraband; and, 2) unsupported conclusions from a confidential informant with unestablished reliability. *271 We have concluded that the marijuana cigarette butt was lawfully seized under the "plain view" doctrine. Thus, it was properly considered in determining whether the search warrant was supported by probable cause. Accordingly, now we must determine whether the validity of the warrant depended upon the inclusion of the confidential source's tips.
LSA-C.Cr.P. Art. 162 provides:
"A search warrant may issue only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant.
A search warrant shall particularly describe the person or place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search or seizure."
Probable cause exists when the facts and circumstances within the affiant's knowledge, and of which he has reasonably trustworthy information are sufficient to support a reasonable belief that evidence or contraband may be found at the place to be searched. State v. Mena, 399 So.2d 149, 152 (La.1981); State v. Revere, 572 So.2d 117, 128 (La.App. 1st Cir.1990), writ denied, 581 So.2d 703 (La.1991). Furthermore, the facts which form the basis of probable cause to issue a search warrant must be contained within the four corners of the affidavit. State v. Duncan, 420 So.2d 1105, 1108 (La.1982).
In dealing with search warrants based on confidential tips, the Supreme Court has refined the two-pronged test[1] of veracity and basis of knowledge into a "totality of the circumstances" test invoking "whether, given all of the circumstances set forth in the affidavit before [the magistrate], including the `veracity' and `basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). An allegation of past reliability is not necessarily a sine qua non to sufficiency of probable cause as long as a common sense reading of the affidavit supports the conclusion that the informant is credible and his information is reliable. State v. Clay, 408 So.2d 1295 (La.1982).
A magistrate's determination of probable cause should be accorded great deference by a reviewing court, and the task of an appellate court is simply to insure that the magistrate had a substantial basis for concluding that probable cause existed. State v. Lewis, 442 So.2d 1159, 1161 (La.App. 3rd Cir.1983), writ denied, 444 So.2d 1214 (La.1984). In doubtful cases, the preference of the appellate court should be to uphold validity so as to encourage law enforcement officials to submit evidence to a judicial officer before acting. State v. Watson, 423 So.2d 1130, 1134 n. 4 (La.1982), appeal after remand, 449 So.2d 1321 (La.1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985).
In the case sub judice, the search warrant affidavit executed by Deputy Hebert reads:
"ON DECEMBER 15, 1988 DEPUTY THEOS DUHON WITH THE CAMERON PARISH SHERIFFS OFFICE RECIEVED [SIC] INFORMATION THAT A BLACK MALE NAMED DELISTER WILLIAMS WENT TO HOUSTON, TEXAS TO PICK UP SOME MARIJUANA. WHEN MR. WILLIAMS RETURNED HOME DEPUTIES MICHAEL HEBERT AND JERRY CONSTANCE WENT TO MR. WILLIAMS RESIDENCE, LOCATED ON PARISH ROAD 3193 SIXTH TRAILER HOUSE ON THE WEST SIDE OF PARISH ROAD 3193. DEPUTY HEBERT KNOCK ON THE SOUTH SIDE DOOR AND A BLACK MALE IDENTIFIED AS DELISTER WILLIAMS ANSWERED. MR. WILLIAMS INVITED DEPUTIES INTO HIS RESIDENCE. DEPUTY HEBERT EXPLAINED TO MR. WILLIAMS *272 THAT THE SHERIFFS OFFICE RECIEVED [SIC] INFORMATION THAT HE HAD DRUGS IN HIS TRAILER, AND WOULD HE MR. WILLIAMS CONSENT TO A PERMISSION FOR SEARCH AND SEIZURE. AT THAT TIME DEPUTY CONSTANCE OBSERVED A PARTILLY [SIC] HANDROLLED CIGARETTE CONTAING [SIC] GREENPLANT MATERIAL AND ONE SEED BELIEVED TO BE MARIJUANA. AT THAT TIME MR. WILLIAMS WAS READ HIS MIRANDA WARNING. THE MARIJUANA WAS LOCATED IN THE LIVING ROOM IN A [SIC] ASHTRAY. DEPUTY CONSTANCE THEN SECURED THE TRAILER HOUSE BY STAYING INSIDE RESIDENCE WITH MR. WILLIAMS AND DEPUTY HEBERT LEFT TO TRY AND OBTAIN A SEARCH WARRANT. FOR THE PAST YEAR DEPUTIES OF THE CAMERON SHERIFFS OFFICE HAVE BEEN RECIEVING [SIC] INFORMATION THAT DELISTER WILLIAMS HAS BEEN SELLING MARIJUANA AND COCAINE IN CAMERON PARISH LA. THIS SEARCH WARRANT IS NEED [SIC] TO OBTAIN EVIDENCE IN VIOLATION OF R.S. 40:966 OF THE LOUISIANA CRIMINAL CODE AND NEEDED IN THE PROSECUTION OF DELISTER WILLIAMS."
A plain reading of the affidavit shows that Deputy Hebert failed to articulate his basis for believing that the undisclosed source's tips are trustworthy and did not specify any underlying circumstances that explain how the undisclosed source acquired the information. No mention is made of whether the undisclosed source has first-hand knowledge of defendant's illegal drug activity or learned of the activity through hearsay information.
After reviewing the affidavit, we conclude that the confidential informant's tip was alone insufficient to provide probable cause for the search of the defendant's trailer. However, the independent observation of contraband items in the defendant's dwelling by the affiant clearly contributed to a showing of probable cause and corroborated sufficient details of the informant's tips to negate the suggestion that the information had been fabricated. Thus, the circumstances indicate that the search warrant was based on facts sufficient to establish probable cause. Moreover, the Louisiana Supreme Court has found that an affidavit reciting the plain view discovery of a small amount of illegal drugs alone constituted a sufficient showing of probable cause for issuance of a warrant. State v. Dixon, 391 So.2d 836 (La.1980). Accordingly, we conclude that the search warrant was properly issued, and that the contraband seized was admissible at trial against the defendant.
Even assuming arguendo that the search warrant is not supported by probable cause, we find that Deputy Hebert's actions fall under the good faith exception announced in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). In Leon, the Court stated that reviewing courts should consider suppression of evidence obtained pursuant to a warrant on a case by case basis, and order exclusion only in those unusual cases where the purposes of the exclusionary rule would be furthered. The Leon court enumerated four instances in which suppression remains an appropriate remedy. These include: (1) if the magistrate or judge issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth; (2) where the issuing magistrate wholly abandoned his detached and neutral judicial role; (3) where the warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and, (4) where the warrant is so facially deficient, i.e., fails to particularize the place to be searched or the things to be seized, that the executing officers cannot reasonably presume it to be valid. Leon, supra, 468 U.S. at 925-27, 104 S.Ct. at 3422. The Louisiana courts have adopted and applied the Leon exception to the exclusionary rule. State v. Johnson, 558 So.2d 325 (La. App. 3rd Cir.1990), writ denied, 568 So.2d *273 1076 (La.1990); State v. Newsome, 544 So.2d 82 (La.App. 3rd Cir.1989), writ denied, 551 So.2d 1317 (La.1989).
In the case sub judice, none of the four instances under Leon where suppression would be a proper remedy are presented. The informant who provided the tip concerning the defendant's trip to Texas was known to Deputy Duhon and had provided accurate information on other occasions which had led to arrests. Both deputies testified that they drove to defendant's trailer to speak with defendant about his possible involvement in illegal drug activity. Neither deputy entered the trailer with the intent to conduct a full scale search nor to execute a custodial arrest of defendant. Only after the marijuana cigarette butt was discovered in plain view did the deputies secure the trailer and promptly obtain a search warrant. Nowhere in the record is there any evidence of bad faith or knowledge that the search warrant lacked the requisite probable cause. Thus, the evidence seized as a result of the warrant falls within the Leon exception to the exclusionary rule and was properly admitted at defendant's trial.

SUFFICIENCY OF EVIDENCE
Defendant contends that the verdict was not supported by the law and evidence. He argues that the State failed to prove beyond a reasonable doubt that he was in possession of marijuana and cocaine and that he had the requisite intent to distribute. Defendant avers that the State did not exclude every reasonable hypothesis of innocence in obtaining the convictions based solely on circumstantial evidence.
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore the appellate court should not second-guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino v. King, 436 So.2d 559 (La. 1983), citing State v. Richardson, 425 So.2d 1228 (La.1983).
LSA-R.S. 40:966(A) and 967(A), respectively, prohibit the knowing or intentional possession with intent to distribute marijuana or cocaine. Possession of illegal drugs can be in the form of actual possession wherein the contraband is found on the defendant's person or constructive possession if the circumstances show that the contraband is subject to his dominion and control. State v. Trahan, 425 So.2d 1222 (La.1983); State v. Harris, 585 So.2d 649 (La.App. 4th Cir.1991); State v. Newberry, 560 So.2d 121 (La.App. 3rd Cir.1990).
Whether defendant has dominion and control over the illegal drugs involves an analysis of:
"... defendant's knowledge that illegal drugs are in the area; the defendant's relationship with the person found to be in actual possession; the defendant's access to the area where the drugs were found; the evidence of recent drug use by the defendant; the defendant's physical proximity to the drugs; and any evidence that the particular area was frequented by drug users."
State v. Tasker, 448 So.2d 1311, 1314 (La. App. 1st Cir.1984), writ denied, 450 So.2d 644 (La.1984), citing Bujol v. Cain, 713 F.2d 112 (5th Cir.1983). The mere presence of the defendant in the area where the drugs are found or the mere fact that the defendant knows the person in actual possession is insufficient to prove constructive possession; rather, guilty knowledge is an essential element. State v. Trahan, supra; State v. Jones, 544 So.2d 636 (La.App. 3rd Cir.1989).
Defendant raises certain points, which, he asserts, tend to show that drugs found in the trailer belonged to someone else: 1) no fingerprints were found on any of the contraband; 2) the trailer had been sold and no longer belonged to him; 3) the *274 trailer had been occupied by others; and, 4) several other personal items including clothing and a diary belonging to someone else were found in the trailer.
Defendant's reliance on the absence of fingerprints on the illegal drugs and the lack of ownership of the trailer as exculpatory evidence is misplaced. Neither the presence of defendant's fingerprints on the illegal drugs nor the ownership of the trailer are essential elements of constructive possession.
Defendant next contends that he did not own the trailer, and that someone else occupied it. The defendant testified that he sold the trailer in July of 1988, to his niece, Jacqueline Johnson. He claims that he had been living in Alabama for six or seven months prior to the time of his arrest in December of 1988, and that he only returned to the area to find a tenant for the trailer, and to remove some furniture. The defendant claimed that a man named Robert Lee Jones occupied the trailer in December of 1988. The defendant claims to have last visited the trailer thirty-two days before December 15, 1988. He also claims to have rented the trailer, for a period, to a woman named Consuella. No evidence was offered to prove the existence of Jones, and Consuella did not testify. Furthermore, defendant's attempt to sell the trailer to his neighbor after his arrest belies his contention that he did not own the trailer at the time of his arrest.
Moreover, defendant's claim that he did not live in the trailer and had just arrived from out of town on the day of his arrest is contradicted by testimony from two neighbors. Both long-time neighbors testified that they observed defendant living in the trailer with his girl friend at the time of his arrest and never saw any other male frequenting the trailer. According to the neighbors, defendant would remain gone for only a few days, a week or two at most, and would always return to the trailer.
The evidence shows that defendant exercised dominion and control over the areas where the drugs were located. Indeed, the location of the contraband items throughout the trailer, in close proximity to the defendant and his personal possessions, clearly indicates defendant's knowledge of the presence of drugs and his right to exercise control over them. The defendant was in the living and dining rooms where marijuana cigarettes, rolling papers, and roach clips were located in plain view. Additionally, objects belonging to the defendant such as clothing, his suitcase, and prescription medicines were found in the same areas as were drug paraphernalia and drugs, including the 199 hand rolled marijuana cigarettes, and 98 individual bags of cocaine. These facts fully support the jury finding that defendant constructively possessed the illegal drugs.
The intent to distribute illegal drugs may be established by proving circumstances surrounding defendant's possession which give rise to reasonable inferences of intent to distribute. State v. Ramoin, 410 So.2d 1010 (La.1981); State v. Williams, 457 So.2d 902 (La.App. 3rd Cir. 1984), writ denied, 461 So.2d 313 (La.1984). Some of the factors from which intent to distribute may be inferred are:
"1) Whether the defendant had ever distributed controlled dangerous substances.
2) Whether the substance was found in a form associated with distribution.
3) Whether the quantity was such as to create a presumption of intent to distribute.
4) Whether drug paraphernalia such as scales or baggies were present.
5) Whether large quantities of cash or records indicating past drug transactions were present."
State v. Alsandor, 587 So.2d 197, 198 (La. App. 3rd Cir.1991), citing State v. House, 325 So.2d 222 (La.1975).
In the case sub judice, expert police testimony indicated that the quantity of drugs found in the defendant's dwelling evidenced an intent to distribute. Various items associated with measuring and packaging the drugs were also found. Ninetyeight small baggies containing cocaine were discovered; as stated by expert police testimony, this method of packaging is normally *275 associated with the sale of this illegal drug. Likewise, 199 marijuana cigarettes, a quantity which creates a presumption of intent to distribute, were recovered.
After viewing the evidence in the light most favorable to the prosecution, we find that any rational trier of fact could have found the essential elements of the crimes proven beyond a reasonable doubt. Accordingly, we find that the law and evidence support defendant's convictions for possession of marijuana with intent to distribute and possession of cocaine with intent to distribute.

DECREE
For the foregoing reasons, defendant's convictions and sentences are affirmed. Costs of this appeal are assessed to defendant.
AFFIRMED.
NOTES
[*] Judge Bernard N. Marcantel participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).