STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

11-1434

STATE OF LOUISIANA

VERSUS

DEMARCUS FOBB

**********

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. C16146A
HONORABLE ERIC R. HARRINGTON, DISTRICT JUDGE

**********

JAMES T. GENOVESE
JUDGE

**********

Court composed of Sylvia R. Cooks, J. David Painter, and James T. Genovese, Judges.

Cooks, J., dissents in part.

CONVICTIONS FOR POSSESSION OF MARIJUANA
WITH INTENT TO DISTRIBUTE AND POSSESSION
OF A FIREARM BY A CONVICTED FELON REVERSED
AND CONCOMITANT SENTENCES VACATED;
CONVICTION FOR POSSESSION OF MARIJUANA
ENTERED; REMANDED FOR FURTHER PROCEEDINGS
WITH INSTRUCTIONS.

Paula C. Marx
Louisiana Appellate Project
Post Office Box 80006
Lafayette, Louisiana 70598-0006
(337) 991-9757
COUNSEL FOR DEFENDANT/APPELLANT:
    Demarcus Fobb

**Alex J. Washington**
**Washington & Wells**
**1700 Irving Place**
**Shreveport, Louisiana  71101**
**(318) 841-1233**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Demarcus Fobb**


**Van H. Kyzar**
**District Attorney, Tenth Judicial District**
**Post Office Box 838**
**Natchitoches, Louisiana 71458-0838**
**(318) 357-2214**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana**

**GENOVESE, Judge.**

In this criminal case, Defendant, Demarcus Fobb, appeals his convictions by jury of possession of marijuana with intent to distribute and possession of a firearm by a convicted felon. For the following reasons, due to error patent and insufficiency of the evidence, we reverse the convictions and vacate the concomitant sentences for possession of marijuana with intent to distribute and illegal possession of a firearm by a convicted felon, enter a conviction for the lesser offense of possession of marijuana, and remand this matter for resentencing and a proper disposition of the remaining six counts in the bill of information.

## FACTS AND PROCEDURAL HISTORY

On December 2, 2009, agents of the Natchitoches Parish Sheriff's Office were summoned to 119 Amanda Drive in Natchitoches, Louisiana. After the agents knocked on the door, Defendant came outside and shut the door of the residence. The agents noticed an odor of burnt marijuana coming from Defendant and the residence.

When asked for consent to enter the residence, Defendant refused entry without a search warrant. At that point, Defendant became irate and began to act up, holler loudly, and fight with the agents. He had to be subdued and was then placed in the police vehicle.

After obtaining a search warrant, the agents searched the residence and found two firearms and several packages of marijuana in the only occupied bedroom in the residence. The agents also found $622.00 in the front pocket of Defendant's jeans, and cocaine was found in a cellophane bag in a kitchen cabinet.

Defendant was subsequently charged on January 14, 2010, with five felony and three misdemeanor offenses. He went to trial by jury on the first two counts of

possession of marijuana with the intent to distribute, a violation of La.R.S. 40:966, and possession of a firearm by a convicted felon, a violation of La.R.S. 14:95.1.

On the morning of trial, the State filed a notice pursuant to *State v. Prieur*, 277 So.2d 126 (La.1973), seeking to introduce evidence of Defendant's arrest for a charge of possession of marijuana in February 2010, subsequent to the charge for which he was being tried.[1] The trial court determined that the subsequent arrest was closely-related and relevant to prove "intent, system, lack of mistake and other things like that," and he allowed the evidence into the record over Defendant's objection.

After five jurors were selected, the trial court recessed. When court reconvened, Defendant was not present. The trial judge indicated that the court "had taken a recess and[,] when it was time to go back into court[, Defendant's counsel] advised [the trial judge] that he couldn't find his client, [Defendant], and is still unable to find him[;] and so[,] our assumption is that he's left." Defendant's counsel responded, "Your Honor and just to, just to put it this way, he informed me he was going to go out for a cigarette I think about 10:45." Defense counsel indicated he had looked "all around the courthouse" and in the basement, and the bailiffs had looked "all around the courtroom," but no one could find Defendant. Defendant's brother, Eric Fobb, advised defense counsel he did not know Defendant's whereabouts and had no way to contact him. Trial proceeded without Defendant in the courtroom.

The jury found Defendant guilty as charged on both offenses. The trial judge recalled Defendant's bail and issued a bench warrant for his arrest. On June 22, 2011, the trial judge sentenced Defendant to ten years with the

---

[1]Although the trial court indicated the second *Prieur* notice was filed in open court, the motion itself does not appear in the record on appeal.

Department of Corrections, without benefit of probation, parole, or suspension of sentence, on the conviction of possession of a firearm by a convicted felon. He also sentenced him to five years with the Department of Corrections on the conviction of possession of a Schedule I controlled dangerous substance (CDS) with intent to distribute.[2] The sentences were ordered to be served consecutively.

## ASSIGNMENTS OF ERROR

Defendant basically asserts three assignments of error. He alleges insufficiency of the evidence, trial court error in proceeding with the jury trial in his absence, and trial court error in granting the State's *Prieur* motion thereby allowing the jury to hear evidence of his arrest for misdemeanor possession of marijuana which occurred subsequent to the offense for which he was tried.

## DISCUSSION

On December 2, 2009, Agents Shane LaCaze and Glen Sers of the Natchitoches Parish Sheriff's Office received a call to go to 119 Amanda Drive. They knocked on the door, and Defendant, known to Agent LaCaze, answered it. Defendant came outside and shut the door to the residence. Agent LaCaze testified that Defendant "had an odor of burnt marijuana coming from his person" and from the residence. Agent Sers saw "some residue on his shirt."

When Agent LaCaze asked for consent to enter the residence, Defendant "started getting uneasy" and said, "[N]o, y'all are not coming in my house without a search warrant." Defendant said no one else was in the house. The agents began to detain Defendant, and, according to Agent LaCaze:

> He started to fight us, uh . . . we took him to the ground. He was yelling at the neighbors and he was hollering . . . they're killing me, they killing me . . . if I remember correctly. Uh, he was hollering for

---

[2]Defendant was charged with and found guilty of possession of a Schedule I CDS. The trial court, however, sentenced Defendant to five years "[o]n the crime of Possession of a Schedule II Substance with Intent to Distribute. . . ."

3

help. He was hollering so loud that the people a street over call [sic] the [police department] . . . said somebody was screaming for help.

After they put Defendant in the police vehicle, the agents tried to open the door to the house, but it was locked. Defendant's brother, Eric, "came out of the residence from behind [them]."

Eric was wearing "some boxers or some sleeping pants" and was putting his pants on as he exited the residence. He said he had been sleeping. Eric "also locked the door on his way out." The agents used Eric's key, detained him, and secured the house. They made sure no one else was inside "that could harm [them] or destroy any evidence" and began the process of obtaining a search warrant.

After obtaining the search warrant, the agents searched the residence. The search revealed a .25 caliber Beretta firearm, two suspected marijuana blunts, a 9mm firearm, "a Ziploc bag containing several packages of suspected marijuana," and individually packaged bundles of suspected marijuana that were identified by smell in the courtroom. Defendant had no keys to the residence and no marijuana on his person when agents took him into custody. His charge of possession of marijuana with intent to distribute was based on the marijuana found in a drawer in the front bedroom. Agent Sers found two $100.00 bills, fourteen $20.00 bills, eleven $10.00 bills, five $5.00 bills, and seven $1.00 bills in the front pocket of Defendant's jeans, for a total of $622.00. Agent Sers testified he works cases "just about daily" where drugs and cash are seized, and the people selling drugs are typically found with smaller denominations of cash, "fives, tens, and twenties." He also identified packaging of smaller bags of drugs placed in a bigger bag as the way "somebody who is selling or distributing it" packages drugs. Agent Sers believed the bigger bags to have a value of around $60.00, and they would be "large bags for a user."

4

Agent Billy Meziere of the Natchitoches Drug Task Force testified that he had known Defendant seven or eight years at the time of this incident and had never known him to have a job. He and other agents conducted the search of the residence. Only the front bedroom appeared to be occupied. Agent Meziere testified Defendant "ha[d] been seen several times driving the same automobile" that "ha[d] been seen at the residence on multiple occasions."

Agent Meziere identified photographs of a vase they found in a kitchen cabinet that contained a paper bag holding a cellophane bag containing cocaine and residue. They located a blue firebox in the front bedroom that contained $1,100.00 in the form of forty-six $20.00 bills and eighteen $10.00 bills. Agent Meziere retrieved a key from Eric Fobb's keychain that opened the firebox, and he also got the keys to the house from Eric. The two firearms and the bag of marijuana were all found in drawers of the only bedroom that was occupied. Agent Meziere saw men's clothing in the bedroom closet and clothes that appeared to be of multiple sizes.

Greg Dunn of the Natchitoches Drug Task Force testified as an expert in the field of narcotics interdiction. He believed, "[i]f this was for a personal use, you would have a much smaller packages [sic,] and you would probably only have one package[,] enough for somebody to roll a joint or roll a blunt, whatever it is they're gonna smoke for personal consumption." He considered Defendant to be "at least [a] mid-level" dealer, based on "the sizing of the bags."

Rachal Plaisance of the North Louisiana Crime Lab's drug analysis section testified as an expert witness in CDS analysis and identification. She described how she examined five individual bags inside an outer bag and determined that all of the bags contained a total of 112 grams of marijuana. Assistant District Attorney Stuart Wright testified he was present in court in 1997 when Defendant

5

pled guilty to possession of cocaine with intent to distribute and was sentenced to serve seven years with the Department of Corrections. When the present charges were filed against Defendant, Mr. Wright compared the files to make sure Defendant was the same individual who pled in 1997 and determined that he was.

Agent LaCaze encountered Defendant again during a routine traffic stop on February 2, 2010. When the driver consented to a search of the vehicle, Agent LaCaze made contact with Defendant, who was a passenger. As Agent LaCaze leaned toward the vehicle's window, he "could smell a strong odor of suspected green marijuana coming from his person." He found "a large amount . . . large clear plastic bag of suspected marijuana" in Defendant's back left pocket. During the booking process, Defendant gave 119 Amanda Drive, the site of the arrest in this case, as his address. That case was pending at the time of trial.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find one critical error patent. Defendant was charged by bill of information with eight counts consisting of various felonies and misdemeanors; however, he was only tried on counts one and two. The other counts were not severed. Hence, there was no proper disposition of counts three through eight charged in the bill of information.

In *State v. Hypolite*, 04-1658, pp. 2-3 (La.App. 3 Cir. 6/1/05), 903 So.2d 1275, 1277-78, *writ denied*, 06-618 (La. 9/22/06), 937 So.2d 381, this court stated:

> Seven of the counts charged in the bill of information have not been properly disposed of. La.Code Crim.P. art. 819 provides: "If there is more than one count in an indictment, the jury must find a verdict as to each count, unless it cannot agree on a verdict as to a count." Hypolite was originally charged with eight counts: 1) armed robbery; 2) public intimidation; 3) reckless operation of a vehicle; 4) resisting an officer; 5) aggravated flight from an officer; 6) hit and

6

run driving; 7) a violation of the requirement of two functional headlights; and, 8) driving without a license. At trial, the clerk read only count one, armed robbery, and the jury returned a verdict as to that count only. This court submitted an information request asking for "[a]ny motion, minute entry, order or amended bill concerning the disposition of Counts 2-8 charged in the Bill of Information. . . ." In response, the Deputy Clerk of Court for Iberia Parish submitted an affidavit stating that she had examined the record and had not found an amended bill of information. Therefore, the record before this court contains no evidence that counts two through eight have been disposed of.

This court addressed a similar issue in *State v. Davis*, 614 So.2d 270, 275 (La.App. 3 Cir.), *writ granted*, 626 So.2d 1180 (La.1993), *rev'd on other grounds*, 93-0599 (La.4/11/94), 634 So.2d 1168. The court stated:

> The record indicates a possible error patent regarding the number of verdicts returned by the jury. Defendant was indicted on three counts of malfeasance in office and one count of injuring public records, but a verdict was returned only as to one count of malfeasance in office. A motion to sever offenses was filed by the State on February 14, 1991, with the State arguing that count two should be tried separately. On May 13, 1991, the court ordered the defendant to show cause on May 15, 1991 as to why the motion should not be granted. The court minutes of May 15, 1991 failed to show whether the court ruled on this motion. At trial, only count two was read to the jury. The record does not show the disposition of the other counts.
>
> La.C. Cr.P. art. 819 provides:
>
>> If there is more than one count in an indictment, the jury must find a verdict as to each count, unless it cannot agree on a verdict as to a count.
>
> We will therefore remand the case for a determination of whether the motion to sever was granted and, if not, for a proper disposition of the remaining charges.

No motion to sever was filed by the State in the present case. Accordingly, this court will remand the present case for a proper disposition of counts two through eight. *See also State v. Pitre*, 04-1134 (La.App. 3 Cir. 2/9/05), 893 So.2d 1009; *State v. James*, 99-1858 (La.App. 3 Cir. 5/3/00), 761 So.2d 125, *writ denied*, 00-1595 (La.3/23/01), 787 So.2d 1010; and *State v. Cash*, 03-853 (La.App. 3 Cir. 12/10/03), 861 So.2d 851, *writ denied*, 04-0027 (La.4/30/04),

872 So.2d 472, and 04-0232 (La.5/7/04), 872 So.2d 1080, where this court has remanded cases for the disposition of charges.

In the instant case, an information request was sent to the trial court requesting any motion, minute entry, amended bill, or other pleading concerning the disposition of counts three through eight charged in the bill of information. In response, the clerk of court submitted an affidavit stating that none of the requested information regarding disposition of said charges was found. There is no indication in the record that a motion to sever was filed. Accordingly, we remand the case for a proper disposition of counts three through eight.

## SUFFICIENCY OF THE EVIDENCE

Defendant argues the evidence was insufficient to convict him. He contends no one identified him to the jury at trial, and reasonable doubt existed that he possessed the drugs and firearms found inside the residence. He asks this court to vacate his conviction for possession of marijuana with the intent to distribute and enter the lesser responsive verdict of possession of marijuana.

There is sufficient evidence for conviction if this court determines that "the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt." *State v. Hobley*, 98-460, p. 33 (La.12/15/99), 752 So.2d 771, 790, *cert. denied*, 531 U.S. 839, 121 S.Ct. 102 (2000) (citing *State v. Captville*, 448 So.2d 676 (La.1984)). "This standard, now legislatively embodied in LSA-C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. The appellate court does not assess the credibility of witnesses or reweigh evidence." *State v. Hollier*, 09-1084, p. 3 (La.App. 3 Cir. 4/7/10), 37 So.3d 466, 470, *writ denied*, 10-1037 (La. 12/10/10), 51 So.3d 722 (citations omitted)

8

(quoting *State v. Brown*, 42,188, 42,189, 42,190, p. 10 (La.App. 2 Cir. 9/26/07), 966 So.2d 727, 741, *writ denied*, 07-2199 (La. 4/18/08), 978 So.2d 347).

"In order to convict a defendant for possession of a CDS with the intent to distribute pursuant to LSA-R.S. 40:967(A), the state must prove beyond a reasonable doubt that the defendant knowingly and intentionally possessed the CDS and that he did so with the intent to distribute it." *Id.* (quoting *Brown*, 966 So.2d at 742).

> Possession of narcotic drugs can be established by actual physical possession or by constructive possession. A person can be found to be in constructive possession of a controlled substance if the State can establish that he had dominion and control over the contraband, even in the absence of physical possession.
>
> A determination of whether there is sufficient "possession" of a drug to convict depends on the particular facts of each case. Although mere presence in an area where drugs are located or mere association with one possessing drugs does not constitute constructive possession, this court has acknowledged several factors to be considered in determining whether a defendant exercised sufficient control and dominion to establish constructive possession, including: (1) his knowledge that drugs were in the area; (2) his relationship with the person, if any, found to be in actual possession; (3) his access to the area where the drugs were found; (4) evidence of recent drug consumption; and (5) his physical proximity to drugs.

*State v. Major*, 03-3522, pp. 7-8 (La.12/1/04), 888 So.2d 798, 802 (citations omitted). We find that the same standard applies to charges under La.R.S. 40:966 for possession with intent to distribute marijuana.

Guilty knowledge is an awareness of illegal drugs in one's possession; it is a required element for a conviction of possession of a narcotic. *See State v. Carter*, 07-1237 (La.App. 3 Cir. 4/9/08), 981 So.2d 734, *writ denied*, 08-1083 (La. 1/9/09), 998 So.2d 712; *State v. Lathers*, 03-941 (La.App. 5 Cir. 2/23/04), 868 So.2d 881; *State v. Goiner*, 410 So.2d 1085 (La.1982). Here, marijuana was found in the

9

house, and the odor of marijuana followed Defendant outside when he answered the door. Agent Sers noticed what he believed to be marijuana residue on Defendant's shirt. Marijuana blunts were found in ashtrays in two locations inside the residence. Defendant's brother was also present and may have been asleep at the time police arrived. All of the necessary elements of constructive possession are present. The presence of marijuana was obvious; Defendant and his brother were the only people present; Defendant had access and proximity to the marijuana found in the residence; and, the evidence showed recent marijuana use. There is sufficient evidence in the record to support a conviction of possession of marijuana. In his original brief, Defendant argues not for acquittal, but for conviction on the lesser charge of possession of marijuana.

Defendant's constructive possession of the marijuana, however, does not establish his intent to distribute it. Factors to consider in determining whether a defendant has the intent to distribute a controlled dangerous substance (CDS) are:

> "(1) Whether the defendant had ever distributed controlled dangerous substances.
>
> (2) Whether the substance found was in a form associated with distribution.
>
> (3) Whether the quantity was such as to create a presumption of intent to distribute.
>
> (4) Whether drug paraphernalia such as scales or baggies were present.
>
> (5) Whether large quantities of cash or records indicating past drug transactions were present."

*State v. Williams*, 608 So.2d 266, 274 (La.App. 3 Cir. 1992) (quoting *State v. Alsandor*, 587 So.2d 197, 198 (La.App. 3 Cir. 1991), citing *State v. House*, 325 So.2d 222 (La.1975)). A relatively small amount of marijuana found in the ashtrays does not satisfy these factors.

10

While the factors do apply with regard to the substantial amount of marijuana found in drawers at the residence, the State presented no evidence of Defendant's guilty knowledge of that marijuana. The State attempted to prove Defendant resided at 119 Amanda Drive, but even that fact, without more, does not establish Defendant's guilty knowledge of the presence of the drugs. Agent Dunn considered Defendant to be "at least [a] mid-level" dealer, based on "the sizing of the bags[,]" but that conclusion inherently assumes Defendant had guilty knowledge of the drugs.

On the other hand, Defendant had $622.00 in denominations consistent with drug dealing in his pocket, and he was not known to have ever held a job. The marijuana was found in packaging consistent with drug distribution. These factors, according to *Williams*, 608 So.2d 266, infer the intent to distribute. This alone is insufficient evidence that Defendant knew of the drugs hidden in the drawers of the residence. We find that the evidence, while it established the offense of possession of marijuana, was insufficient to prove Defendant's guilty knowledge of the presence of the packaged drugs and, therefore, was insufficient to convict Defendant of possession of marijuana with the intent to distribute it.

Defendant was also found guilty of illegal possession of a firearm by a convicted felon. "It is unlawful for any person who has been convicted of . . . any violation of the Uniform Controlled Dangerous Substances Law which is a felony . . . to possess a firearm or carry a concealed weapon." La.R.S. 14:95.1 (footnote omitted).

> To convict Defendant of possession of a firearm by a convicted felon, the State must prove beyond a reasonable doubt: (1) the possession of a firearm; (2) a previous conviction of an enumerated felony; (3) absence of the ten-year statutory period of limitation; and, (4) general intent to commit the offense. La. R.S. 14:95.1; *State v. Husband*, 437 So.2d 269 (La.1983); *State v. Tatum*, 27,301 (La.App. 2 Cir. 9/27/95); 661 So.2d 657.

11

*State v. Hanner*, 09-1109, p. 5 (La.App. 3 Cir. 4/14/10), 35 So.3d 1178, 1182 (quoting *State v. Recard*, 97-754, p. 9 (La.App. 3 Cir. 11/26/97), 704 So.2d 324, 329, *writ denied*, 97-3187 (La. 5/1/98), 805 So.2d 200).

> Neither possession of a firearm by a convicted felon nor illegal carrying of weapons requires actual physical possession of a firearm upon the person of the accused; constructive possession of a firearm satisfies the possessory element. *State v. Armentor*, 94-745 (La.App. 3 Cir. 2/1/95); 649 So.2d 1187, *writ denied*, 95-0557 (La.6/30/95); 657 So.2d 1027, citing *State v. Day*, 410 So.2d 741 (La.1982). Constructive possession exists when the illegal object is subject to the defendant's dominion and control. *State v. Johnson*, 463 So.2d 778 (La.App. 4 Cir.1985).

> . . . .

> Guilty knowledge is an essential element in proving constructive possession [of a firearm] and may be inferred from the circumstances.

*State v. Brooks*, 99-478, pp. 4-6 (La.App. 3 Cir. 12/8/99), 756 So.2d 336, 339, *writ denied*, 00-1492 (La. 5/25/01), 792 So.2d 750 (citation omitted); *see also State v. Joseph*, 02-1370, pp. 2-3 (La.App. 3 Cir. 4/17/03), 854 So.2d 914, 917. "Constructive possession entails an element of awareness or knowledge that the firearm is there and the general intent to possess it." *State v. McKinney*, 44,269, p. 7 (La.App. 2 Cir. 5/13/09), 12 So.3d 422, 426 (citing *State v. Kennedy*, 42,258 (La.App. 2 Cir. 8/15/07), 963 So.2d 521).

In the instant case, both firearms were found in drawers in the residence. The State presented no evidence that Defendant knew of their presence. The facts and circumstances in this case do not infer Defendant's guilty knowledge. Accordingly, we find that the evidence was insufficient to convict Defendant of illegal possession of a firearm by a convicted felon.

Defendant also argues the State failed to identify Defendant at trial. No one could identify Defendant to the jury because Defendant was not present during any of the proceedings after testimony began. The State did, however, present Agent

12

LaCaze as a witness, who testified that he detained Defendant at the residence, and who also identified a photograph admitted into evidence, without objection, as being a photograph of Defendant. This evidence was sufficient to identify Defendant, even in his absence.

## DEFENDANT'S ABSENCE DURING TRIAL

Defendant contends that the trial court erroneously proceeded with the trial without his presence in the courtroom. He contends he is entitled to a new trial because the State did not prove his voluntary absence.

The record indicates that the trial court took a recess after five jurors had been selected, and Defendant never returned to the courtroom for the remainder of the trial. This exchange took place between the trial judge and Defendant's counsel at 12:10 p.m.:

> THE COURT: Okay we are on the record. We are out of the presence of the jury in another courtroom[;] and uh, we, we had taken a recess and[,] when it was time to go back into court[, Defendant's counsel] advised me that he couldn't find his client, [Defendant], and is still unable to find him[;] and so[,] our assumption is that he's left. And what we've been doing is researching what we do at this point.

> [DEFENSE COUNSEL]: Your Honor and just to, just to put it this way, he informed me he was going to go out for a cigarette I think about 10:45.

Counsel stated that he had looked "all around the courthouse" and that the bailiffs had looked "all around the courtroom," but no one could locate Defendant. Defendant's brother, Eric Fobb, "advised [defense counsel] that he did not know where his brother was[,]" "[a]nd that he had no means of uh, contacting him . . . ." Defense counsel objected to proceeding with the trial in Defendant's absence. The trial court did not call witnesses or have any type of hearing to determine the reason for the absence.

13

Defendant's trial began "when the first prospective juror [was] called for examination." La.Code Crim.P. art. 761. The minutes reflect that Defendant was present at that time. Defendant's continued presence was required "[a]t all times during the trial when the court [was] determining and ruling on the admissibility of evidence[]" and "at all proceedings when the jury [was] present." La.Code Crim.P. art. 831(A)(4) and (5). However, because Defendant was present when the trial began, and his attorney was present throughout the proceedings, his right to be present is considered waived if he voluntarily absented himself. La.Code Crim.P. art. 832(A)(1).

In *State v. King*, 01-506 (La.App. 3 Cir. 11/7/01), 799 So.2d 1241, *writ denied*, 01-3222 (La. 9/30/02), 825 So.2d 1190, the defendant did not appear on the second day of trial. Defense counsel moved for a mistrial because the defendant was committed to a mental unit due to depression; however, counsel did not produce any medical documentation in support of the claim until after the State rested its case. The trial court denied the motion for mistrial, finding that the defendant had presented no evidence in support of his request even though he was in the hospital. Defense counsel then made a second motion for mistrial based on correspondence from the defendant's physician stating that the defendant was incompetent to stand trial. After an interview with the trial judge, the physician retracted the statement, and the defendant appeared for the remainder of the trial. This court affirmed the trial court's ruling, finding that the defendant presented no evidence to show he was involuntarily prevented from attending his trial.

In *State v. Tate*, 95-1152 (La.App. 3 Cir. 3/6/96), 670 So.2d 671, the defendant did not appear for the second day of trial. Attempts to contact him were unsuccessful. Defense counsel moved for a mistrial, but the trial court denied it, finding the defendant's absence was voluntary. This court affirmed the decision.

14

The defendant also failed to appear for his second day of trial in *State v. Humphrey*, 576 So.2d 1104 (La.App. 3 Cir. 1991). Unsuccessful attempts were made to locate him, and then the trial court received word he had left town and would not return. The trial court then denied defense counsel's motion for mistrial and proceeded with the trial. Finding the defendant "freely and voluntarily chose to absent himself from his trial[,]" this court held it would "not allow a defendant to manipulate and frustrate the speedy trial and prosecution of criminal cases by absenting himself from a trial which has already commenced whenever he chooses to do so." *Id.* at 1105 (citing *State v. Ray*, 547 So.2d 1350 (La.App. 3 Cir), *writ denied*, 553 So.2d 470 (La.1989)).

In the instant case, defense counsel made no motion for a mistrial or for a continuance. Rather, he only objected to proceeding with the trial in Defendant's absence on constitutional grounds of due process. Now, on appeal, Defendant complains the State did not prove his absence was voluntary where the record shows he went "out for a cigarette" and did not return. Defendant never attempted to put on evidence of an involuntary absence, and he never made any post-trial filing to suggest his absence was involuntary. The very nature of Defendant's absence shows it was voluntary. Finding otherwise would allow Defendant to manipulate and frustrate the trial process at his whim and beck and call. This argument lacks merit.

## ASSIGNMENT OF ERROR NO. 3

Defendant argues that the trial court erred in granting the State's *Prieur* notice filed on the day of trial that allowed evidence of Defendant's arrest for possession of marijuana subsequent to the offense for which he was on trial. The State indicated it was being offered as an "other bad act" to "prove intent, system,

15

lack of mistake." La.Code Evid. art. 404(B). The State intended to show not only the fact of the arrest, but also the circumstances surrounding the arrest.

The common directive of Louisiana's harmless error rule is that "appellate courts should not reverse convictions for errors unless the accused's substantial rights have been violated." *State v. Johnson*, 94-1379, p. 13 (La. 11/27/95), 664 So.2d 94, 100. Thus, in determining whether an error is harmless, the appellate court should ask "whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error." *Id*. (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081 (1993)).

In the instant case, we find the issue of the alleged error, if any at all, is moot regarding the convictions for possession of marijuana with the intent to distribute and possession of a firearm by a convicted felon in light of the fact that we have vacated those convictions. The lesser conviction for possession of marijuana, however, is unattributable to any possible error by the trial court in light of the overwhelming evidence of guilt, *i.e.*, Defendant's presence in the residence where marijuana blunts were found in plain view, the odor of burning marijuana that followed him outside when police arrived, and the marijuana residue police observed on his shirt. Therefore, any alleged error is harmless.

## DISPOSITION

Defendant's convictions for possession of marijuana with the intent to distribute and illegal possession of a firearm by a convicted felon are reversed and concomitant sentences vacated. We enter a conviction for the lesser offense of possession of marijuana and remand this matter for resentencing and a proper disposition of counts three through eight of the bill of information.

**CONVICTIONS FOR POSSESSION OF MARIJUANA WITH INTENT TO DISTRIBUTE AND POSSESSION OF A FIREARM BY A CONVICTED FELON REVERSED AND CONCOMITANT SENTENCES VACATED;**

16

**CONVICTION FOR POSSESSION OF MARIJUANA ENTERED; REMANDED FOR FURTHER PROCEEDINGS WITH INSTRUCTIONS.**

STATE OF LOUISIANA

VERSUS

DEMARCUS FOBB

**Cooks, J., Dissents in part.**

I respectfully dissent from that portion of this court's ruling which reduces Defendant's conviction for possession with intent to distribute marijuana, a Controlled Dangerous Substance (CDS), to a lesser offense. I agree with the jury's verdict finding Defendant guilty of possession of a CDS with intent to distribute.